[Cite as *Hicks v. Garrett*, 2012-Ohio-3560.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  | : | JUDGES: |
| ANDREA S. HICKS, EXECUTOR OF | : | Sheila G. Farmer, P.J. |
| THE ESTATE OF THELMA A. | : | John W. Wise, J. |
| GREDICK | : | Julie A. Edwards, J. |
|  | : |  |
| Plaintiff-Appellant | : | Case No. 2011CA00109 |
|  | : |  |
| -vs- | : |  |
|  | : | O P I N I O N |
|  | : |  |
| JEAN COOPER GARRETT, et al., |  |  |
|  |  |  |
| Defendants-Appellees |  |  |

CHARACTER OF PROCEEDING: Civil Appeal from Stark County
Court of Common Pleas Case No.
2009CV03839

JUDGMENT: Affirmed In Part and Reversed and
Remanded In Part

DATE OF JUDGMENT ENTRY: August 6, 2012

APPEARANCES:

For Plaintiff-Appellant                    For Appellees/Cross-Appellants

JAMES R. RECUPERO                   ANTHONY E. BROWN
MELISSA S. ULRICH                      400 South Main Street
Belden Village Street, N.W., Ste. #403   North Canton, Ohio  44720
Canton, Ohio  44718

For Appellee/Cross-Appellant

KRISTEN E. CAMPBELL
Bretton Commons, Suite #400
8040 Cleveland Ave., N.W.
North Canton, Ohio  44720

*Edwards, J.*

{¶1} Plaintiff-appellant, Andrea Hicks, Executor of the Estate of Thelma Gredick, appeals from the August 16, 2010, Judgment Entry of the Stark County Court of Common Pleas and from various other orders following a jury trial. Defendants-appellees Jean Cooper Garrett and Emershaw, Mushkat & Schneier, George Emershaw and Donald Hicks have filed Cross-Appeals.

## STATEMENT OF THE FACTS AND CASE

{¶2} Appellant Andrea Hicks is the Executor for the Estate of Thelma Gredick. Gredick, who died in 2008, was appellant's mother.

{¶3} In 2000, appellee Jean Cooper Garrett, an attorney with appellee Emershaw, Mushkat & Schneier (hereinafter "EMS"), entered into an attorney-client relationship with Thelma Gredick. After her husband died, Gredick retained appellee Garrett to handle her husband's estate. Gredick was referred to appellee Garrett by appellee Donald Hicks, who was appellant's brother-in-law and an employee of appellee EMS.

{¶4} At the time of his death, Gredick's husband had certificates of deposit (CD's) that were payable on death to Gredick. The total value of the CDs was approximately $154,417.19. Appellee Garrett initially listed the CDs as part of Mr. Gredick's estate. Once Gredick arranged to get the CDs out of her deceased husband's name and into her own name, the CDs were consolidated into one check in Gredick's name payable to her.

{¶5} On February 10, 2001, appellee Garrett drove Gredick to FirstMerit Bank, which is where appellee Garrett maintained her personal bank accounts. The check,

which was made payable to Gredick, was endorsed by both Gredick and appellee Garrett. The money was then directly deposited into several of appellee Garrett's personal accounts with FirstMerit Bank.

{¶6}   On March 14, 2001, appellee Garrett obtained an order from the Probate Court judge permitting her to file an amended schedule of estate assets that did not include the CDs.

{¶7}   Gredick was subsequently moved to Pebble Creek assisted living facility. While Gredick was at Pebble Creek, appellee Garrett, at her request, prepared documents giving appellant power of attorney. On February 13, 2002, appellee Garrett met with appellant and Garrett at Pebble Creek and appellant signed the documents. During such meeting, appellant asked appellee Garrett about the CDs and was told that they were "reinvested long term earning good interest." Trial Transcript at 167.

{¶8}   The probate estate of Gredick's husband was closed on September 3, 2002.

{¶9}   Appellant spoke with appellee Garrett about the CDs again in the springtime of 2004 and was told that they were maturing the end of May of 2004 and that appellee Garrett would send appellant the money and paperwork. Appellant never received anything from appellee Garrett the end of May of 2004.

{¶10}  On about August 3, 2004, appellant sent appellee Garrett a letter asking about the CDs and indicating that appellant had not yet received the paperwork or the money. Appellant asked appellee Garrett to call her to discuss the matter.  Appellee Garrett did not respond.  Appellant sent a second letter on or about August 10, 2004, again asking about the CDs and asking appellee Garrett to call her. There was no

response. Appellant also sent letters dated September 24, 2004, January 12, 2005, June 1, 2005 and July 23, 2006 asking about the CDs. Appellee Garrett never responded to the letters or called appellant.

{¶11} In the spring of 2005, appellant then went to Bank One, which is where her father had had his CDs, and asked what had happened to the money. She was given a photocopy of the check dated February 9, 2001 in the amount of $154,417.19 that was made out to her mother. Appellant saw that both appellee Garrett and her mother had endorsed the back of the check. After obtaining the photocopy of the check, appellant tried to call appellee Garrett and never got an answer. She also tried to contact appellee EMS and left a message for appellee Emershaw that she had never received any return telephone calls.

{¶12} In 2005, appellant called appellee Donald Hicks, who was her brother-in-law and an employee of appellee EMS, trying to find out what had happened to the money from the CDs. Appellee Hicks told her that she should not say anything to appellee EMS because she had a case pending with them involving her husband's property and that she should wait until such case was settled before pursuing the money.  After finding out about the checks in 2005, appellant did not have any conversations with her mother about the same because her mother was showing signs of dementia, including memory loss.

{¶13} In 2005 and 2006, appellant continued contacting appellee Garrett via letters and telephone calls about the CDs, but never heard back from her.

{¶14} In May of 2007, appellant went to FirstMerit Bank with a copy of the check and her power of attorney and asked the bank what had happened to the money. She

discovered that appellee Garrett had taken the check and opened a CD for $100,000.00 in her own name and then deposited the rest of the money in her personal accounts.

{¶15} Appellant then contacted appellee EMS and left messages for appellee Emershaw. Her calls were not returned. She then contacted appellee Hicks and told him that she had discovered what had happened to the money. During an appointment with appellee Emershaw and appellee Hicks in November or December of 2007, appellant asked them how she could get her money back and was told that appellee Emershaw would try to contact appellee Garrett and would call appellant back and let her know what he found out. Appellee Emershaw never called her back.

{¶16} On March 14, 2008, appellant filed a complaint against appellees. Appellant voluntarily dismissed her complaint without prejudice on February 17, 2009 and refiled her complaint on October 6, 2009.  Appellant, in her complaint, set forth claims for legal malpractice/negligence (against appellees Garrett, Emershaw, Hicks), EMS negligent hiring and supervision (against appellees Emershaw and EMS, fraud (against appellee Garrett), conversion (against appellee Garrett) and undue influence (against appellee Garrett).  Appellant also set forth claims of negligence and negligent supervision against FirstMerit Bank.[1]

{¶17} On February 1, 2010, appellee Garrett filed a Motion for Summary Judgment.  Appellees EMS, Emershaw and Hicks filed a Motion for Summary Judgment on February 22, 2010.  Appellees, in their motions, argued, in part, that the claims were barred by the applicable statute of limitations.

{¶18}  Pursuant to a Judgment Entry filed on April 1, 2010, the trial court granted the Motion for Summary Judgment filed by appellees EMS, Emershaw and Hicks in part

---

[1] FirstMerit Bank is not a party to this appeal.

and denied the same in part. The trial court held that appellant's legal malpractice claims against such appellees were barred by the statute of limitations contained in R.C. 2305.11(A) for legal malpractice actions and that her negligent hiring and supervision claims against such appellees were also time barred. The trial court, however, held that material issues of fact remained as to appellant's claims for respondeat superior presumably "related to her claims of conversion, fraud, and undue influence against [appellee] Garrett." .

{¶19} As memorialized in a separate Judgment Entry filed on April 1, 2010, the trial court granted the Motion for Summary Judgment filed by appellee Garrett, in part, and denied the same in part. The trial court found that appellant's legal malpractice claim against such appellee was barred by the statute of limitations contained in R.C. 2305.11(A). The trial court further found that material issues of fact remained as to appellant's claims for conversion, fraud and undue influence.

{¶20} On May 14, 2010, appellees EMS, Emershaw and Hicks filed a Motion for Reconsideration or, in the Alternate, Entry of Final Appealable Order. Such appellees, in their motion, argued, in relevant part, as follows:

{¶21} "First, under this Court's own analysis and judicial finding, the statute of limitations has run on all three tort causes of action. Second, Plaintiff cannot maintain vicarious liability/respondeat superior claims against Donald Hicks, since it is uncontested that Donald Hicks was not Defendant Garrett's employer. Third, Plaintiff did not allege vicarious liability against these moving Defendants relating to conversion, fraud or undue influence. And, finally, the allegations of vicarious liability for the alleged

fraud, conversion or undue influence fail as a matter of law." Appellee Garrett, on June 9, 2010, filed a similar motion. The trial court denied such motions.

{¶22} The matter proceeded to a jury trial on June 29, 2010. Following appellant's opening statement, the trial court granted the oral motion for a directed verdict made by appellees EMS, Emershaw and Hicks. The trial court, in granting such motion , stated, in relevant part, as follows:

{¶23} "And I guess from my perspective what I am looking for here that I didn't hear in opening statement was any way in which - - you didn't allege unjust enrichment, any way in which the law firm, Mr. Hicks, Mr. Emershaw, ordered, instructed, directed, had knowledge of, any of these actions on behalf of Jean Cooper Garrett if proven and without any of those, I don't understand what theory of liability there is to hold the law firm or Mr. Hicks or Mr. Emershaw individually as lawyers in the case.

{¶24} "It is not a case of failure to supervise a lawyer that's not involved anymore. There may arguably have been that, although there's some argument that she was on her own. But absent that nexus which you didn't make any references to in your opening statement, because I made notes of it because I knew this was coming, I am looking for some reason why a directed verdict should not at this point in time be given in favor of those party Defendants….

{¶25} "THE COURT: Based on the representations made during opening statement what the evidence would be in this case, which is what I need to look at, and the total lack of in my mind of a legal nexus between the conduct of Jean Cooper Garrett if proven and the individual lawyers names as well as the law firm named, not withstanding what you have indicated, Mr. Recupero, the behavior stated by you that

would be proven is not the type of conduct for which an entity or law firm or the individual lawyers could also be held accountable absent their active or inactive participation in that conduct or some knowledge of it or unjust enrichment which is not before the Court." Trial Transcript at 153, 155-156.

{¶26} The trial then proceeded against appellee Garrett only.

{¶27} At the close of appellant's case, appellant made an oral motion to amend the complaint to conform to the evidence to add claims for breach of contract, breach of fiduciary duty, and unjust enrichment. At the close of her case, appellant also asked the court for a mistrial or for a new trial with regard to the dismissal of appellees EMS and Emershaw. The trial court denied such motions. The jury then returned a verdict in favor of appellant and against appellee Garrett on her claims for fraud, conversion and undue influence. As memorialized in a Judgment Entry filed on July 6, 2010, the jury awarded appellant $265,384.00 in compensatory damages and $165,000.00 in punitive damages, for a total of $430,384.00.

{¶28} The trial court pursuant to a Judgment Entry filed on July 14, 2010, memorialized its decision granting the motion for a directed verdict made by appellees Emershaw, EMS and Hicks.

{¶29} On July 20, 2010, appellee Garrett filed a Motion for Judgment Notwithstanding the Verdict. On July 28, 2010, appellant filed a Motion for a New Trial. Both motions were denied pursuant to Judgment Entries filed on August 16, 2010.

{¶30} On September 10, 2010, appellant filed a Motion for Attorney's Fees. Following a hearing held on April 7, 2011, the trial court granted such motion and, as

memorialized in a Judgment Entry filed on April 15, 2011, ordered that appellee Garrett pay $172,000.00 as and for attorney fees.

{¶31} On May 12, 2011, appellant filed an appeal. Appellant, in her appeal, raises the following assignments of error on appeal:

{¶32} "I. THE TRIAL COURT ERRED WHEN IT GRANTED PARTIAL SUMMARY JUDGMENT IN FAVOR OF APPELLEES GEORGE EMERSHAW, EMERSHAW, MUSHKAT & SCHNEIER AND JEAN COOPER GARRETT ON THE STATUTE OF LIMITATIONS ISSUE REGARDING APPELLANT'S CLAIMS FOR LEGAL MALPRACTICE, AND WHEN IT GRANTED PARTIAL SUMMARY JUDGMENT IN FAVOR OF APPELLEES GEORGE EMERSHAW AND EMERSHAW, MUSHKAT & SCHNEIER REGARDING THE APPELLANT'S CLAIMS FOR NEGLIGENT HIRING AND SUPERVISION, AND RESPONDEAT SUPERIOR.

{¶33} "II. THE TRIAL COURT ERRED WHEN IT GRANTED PARTIAL SUMMARY JUDGMENT IN FAVOR OF APPELLEE DONALD HICKS ON THE STATUTE OF LIMITATIONS ISSUE REGARDING APPELLANT'S CLAIM FOR LEGAL MALPRACTICE AS AGAINST APPELLEE DONALD HICKS.

{¶34} "III. THE TRIAL COURT ERRED WHEN IT GRANTED DIRECTED VERDICT IN FAVOR OF APPELLEES GEORGE EMERSHAW AND EMERSHAW, MUSHKAT & SCHNEIER ON THE ISSUE OF THEIR VICARIOUS LIABILITY FOR THE ACTIONS OF APPELLEE JEAN COOPER GARRETT FOR CONVERSION, FRAUD AND UNJUST ENRICHMENT.

{¶35} "IV. THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION FOR LEAVE TO AMEND THE COMPLAINT TO CONFORM TO THE

EVIDENCE AND ADD CLAIMS FOR BREACH OF CONTRACT, BREACH OF FIDUCIARY DUTY, AND UNJUST ENRICHMENT.

{¶36} "V. THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION FOR MISTRIAL AND/OR NEW TRIAL."

{¶37} On May 20, 2011, appellee Garrett filed a Notice of Cross-Appeal. Appellee Garrett raises the following assignments of error on appeal:

{¶38} "I. THE TRIAL COURT ERRED IN DENYING COOPER-GARRETT'S MOTION FOR SUMMARY JUDGMENT AND MOTION FOR JNOV AS TO STATUTE OF LIMITATIONS FOR CLAIMS OF CONVERSION, FRAUD, AND UNDUE INFLUENCE.

{¶39} "II. THE TRIAL COURT ERRED IN CALCULATING ATTORNEY FEES."

{¶40} Also on May 20, 2011, appellees EMS, Emershaw and Hicks filed a Notice of Cross-Appeal. Such appellees raise the following assignment of error on appeal:

{¶41} "THE TRIAL COURT ERRED IN DENYING THE APPELLEES' MOTION FOR SUMMARY JUDGMENT, IN PART, AND THE RELATED MOTION FOR RECONSIDERATION AND MOTION FOR NEW TRIAL AS THEY RELATED TO CLAIMS FOR RESPONDEAT SUPERIOR/VICARIOUS LIABILITY."

STANDARD OF REVIEW

{¶42} Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court. *Smiddy v. The Wedding Party, Inc.,* 30 Ohio St.3d 35, 36, 506 N.E.2d 212, (1987). As such, we must refer to Civ.R. 56(C) which provides, in pertinent part: "Summary judgment shall be rendered forthwith if the pleading, depositions, answers to

interrogatories, written admissions, affidavits, transcripts of evidence in the pending case and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in the party's favor."

{¶43}  Pursuant to the above rule, a trial court may not enter summary judgment if it appears a material fact is genuinely disputed. *Vahila v. Hall,* 77 Ohio St.3d 421, 429, 1997-Ohio-259, 674 N.E.2d 1164, citing *Dresher v. Burt,* 75 Ohio St.3d 280, 1996-Ohio-107, 662 N.E.2d 264.

{¶44}  It is subject to this standard of review that we address the assignments of error in this case that related to the Motions for Summary Judgment filed in this case.

I

{¶45}  Appellant, in her first assignment of error, argues that the trial court erred in granting partial summary judgment in favor of appellees Emershaw, EMS, and Garrett on appellant's claims for legal malpractice and in favor of appellees Emershaw and EMS on appellant's claim for negligent hiring and supervision.[2]

{¶46}  R.C. 2305.11 sets forth a one-year statute of limitations for legal malpractice claims. The one-year statutory period begins to run upon the termination of the attorney-client relationship or the discovery of the alleged malpractice, whichever

---

[2] While appellant argues that the trial court erred in granting summary judgment in favor of appellees on appellant's claims for respondeat superior, the trial court actually held, in its April 1, 2010, Judgment Entry, that material issues of fact remained as to such claim.

occurs later. *Ladanyi v. Crookes & Hanson Ltd., et al.,* 8th Dist. No. 87888, 2007-Ohio-540. In *Zimmie v. Calfee, Halter & Griswold* , 43 Ohio St.3d 54, 538 N.E.2d 398 (1989), the Ohio Supreme Court set forth the standard with respect to the statute of limitations for malpractice: "Under R.C. 2305.11(A), an action for legal malpractice accrues and the statute of limitations begins to run when there is a cognizable event whereby the client discovers or should have discovered his injury was related to his attorney's act or non-act and the client is put on notice of a need to pursue its possible remedies against the attorney, or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later." *Id.* at 58. A cognizable event is defined as an event that is sufficient to "alert a reasonable person that in the course of legal representation his attorney committed an improper act." *Spencer v. McGill*, 87 Ohio App.3d 267, 278, 622 N.E.2d 7 (8th Dist. 1993).

{¶47} In the case sub judice, appellant maintains that the cognizable event in this case occurred in May of 2007, which was when appellant went to FirstMerit Bank. However, we concur with the trial court that, analyzing the statute of limitations from either appellant's perspective or her mother's perspective, appellant's legal malpractice claims against appellees Emershaw, EMS and Garrett were time-barred.

{¶48} In the case sub judice, the attorney client-relationship was between appellee Garrett and Gredick who retained appellee Garrett to handle her late husband's estate. In 2001, appellee Garrett drove Gredick to FirstMerit Bank where the subject check, which was made payable to Gredick, was endorsed by both Gredick and appellee Garrett. As noted by the trial court, Gredick knew or should have known of the alleged wrongful conduct and injury at such time. The money was then deposited into

several of appellee Garrett's personal accounts with FirstMerit Bank. Appellee Garrett's representation of Gredick continued until September of 2002 when the probate proceedings involving her husband's estate were closed and the attorney-client relationship between Garrett and Gredick ended. The statute of limitations accrued at latest in September of 2002, when the estate was closed. There is no evidence that Gredick was incompetent as of such time or during the one year period thereafter so as to toll the statue of limitations.

{¶49} Moreover, even if we consider the statute of limitations from appellant's perspective, we find that the legal malpractice claims against appellees EMS, Emershaw and Garrett were time-barred. As is stated above, during a meeting on February 13, 2002, appellant, who had a power of attorney for her mother who was in an assisted living facility, asked appellee Garrett about the CDs and was told that they were "reinvested long term earning good interest." Trial Transcript at 167. Appellant spoke with appellee Garrett about the CDs again in the springtime of 2004, and was told that they were maturing the end of May of 2004, and that appellee Garrett would send appellant the money and paperwork. After appellant never received anything from appellee Garrett in May of 2004, she sent a letter to appellee Garrett on August 3, 2004, asking about the CDs and indicating that appellant had not received the paperwork or the money. Appellant sent a second letter on or about August 10, 2004, again asking about the CDs and asking appellee Garrett to call her and also sent letters to appellee Garrett dated September 24, 2004, and January 12, 2005. In March of 2005, appellant went to Bank One and was provided with a copy of the check endorsed by both appellee Garrett and her mother. During her deposition, she testified that a Bank One

employee told her that she should go to FirstMerit and that they would tell her what had happened to her mother's money. Appellant, however, did not do so immediately. Rather, appellant made some phone calls to appellee Garrett that were not returned and left messages at appellee EMS's office that were unreturned.

{¶50} Based on the foregoing, we find that the claims for legal malpractice accrued in 2005 and that appellant's legal malpractice claims against Emershaw, EMS, and Garrett were barred by the one year statute of limitations contained in R.C. 2305.11. As noted by the trial court, by 2005, appellant should have been alerted that an improper act had taken place.

{¶51} Appellant further contends that the trial court erred in granting summary judgment in favor of appellees Emershaw and EMS on appellant's claim for negligent hiring and supervision. Appellant maintains that such appellees knew that appellee Garrett had lupus and that it affected her ability to practice law and that Garrett was negligently supervised.

{¶52} Negligent hiring and supervision claims are subject to the two-year statutory limit of R.C. 2305.10. Generally, the limitations period begins to run from the date the individual knew or should have known of the injury. *O'Stricker v. Jim Walter Corp.*, 4 Ohio St.3d 84, 447 N.E.2d 727 (1983). Since, as is stated above, appellant should have known of the injury caused by the alleged negligent supervisor in 2005, such claims are time-barred.

{¶53} Based on the foregoing, we find that the trial court did not err in granting summary judgment to appellees Emershaw, EMS and Garrett on the legal malpractice, negligent hiring and negligent supervision claims.

{¶54} Appellant's first assignment of error is, therefore, overruled.

II

{¶55} Appellant, in her second assignment of error, argues that the trial court erred in granting partial summary judgment in favor of appellee Donald Hicks on appellant's claim for legal malpractice against him. The trial court had granted partial summary judgment on the basis that the legal malpractice claim against appellee Hicks was barred by the one year statute of limitations contained in R.C. 2305.11.

{¶56} As is stated above, an action for legal malpractice accrues and the statute of limitations begins to run when either the client discovers or should have discovered that his or her injury was related to his attorney's act or when the attorney client relationship ends, whichever is later. In the case sub judice, there is evidence that appellant, in 2005, called appellee Hicks, who was her brother-in-law and an employee of appellee EMS, trying to find out what had happened to the money from the CDs. Appellee Hicks told her that she should not say anything to appellee EMS because she had a case pending with them involving her husband's property and that she should wait until such case was settled before pursuing the money. Based on such advice, appellant did not take any action until May of 2007 when she went to FirstMerit and discovered that appellee Garrett had deposited the checks into her own accounts.

{¶57} We find that May of 2007 was the "cognizable event" with respect to appellant's claim for legal malpractice against appellee Hicks. Appellant filed her complaint within one year of such date. We find, therefore, that the trial court erred in granting partial summary judgment in favor of appellee Hicks.

{¶58} Appellant's second assignment of error is, therefore, sustained.

III

{¶59}  Appellant, in her third assignment of error, argues that the trial court erred when it granted a directed verdict in favor of appellees Emershaw and EMS at the close of appellant's opening statement on the issue of their vicarious liability for the actions of appellee Garrett.

{¶60}  A trial court's decision on a motion for directed verdict presents a question of law, which an appellate court reviews de novo. *Groob v. Keybank,* 108 Ohio St.3d 348, 2006-Ohio-1189, 843 N.E.2d 1170, ¶ 14. Civ. R. 50 provides for a motion for directed verdict, which may be made at the opening statement of the opponent, at the close of the opponent's evidence, or at the close of all the evidence. Upon receiving a motion for directed verdict, the trial court must construe the evidence most strongly in favor of the party against whom the motion is directed, see Civ. R. 50(A)(4). If the trial court finds on any determinative issue reasonable minds could come but to one conclusion on the evidence submitted, then the court shall sustain the motion and direct the verdict as to that issue. A directed verdict is appropriate where a plaintiff fails to present evidence from which reasonable minds could find in the plaintiff's favor, see *Hargrove v. Tanner*, 66 Ohio App.3d 693, 586 N.E.2d 141 (9th Dist. 1990).

{¶61}  In order for an employer to be liable under the doctrine of respondeat superior, the tort of the employee must be committed within the scope of employment. Moreover, where the tort is intentional, * * * the behavior giving rise to the tort must be 'calculated to facilitate or promote the business for which the servant was employed * * *.'" *Byrd v. Faber*, 57 Ohio St.3d 56, 58, 565 N.E.2d 584, (1991), quoting *Little Miami RR. Co. v. Wetmore*, 19 Ohio St. 110, 132, 1869 WL 35, (1869).  *Byrd* also noted, "As

we held in 1178 *Vrabel v. Acri* (1952), 156 Ohio St. 467, 474, 46 O.O 387, 390, 103 N.E.2d 564, 568, 'an intentional and willful attack committed by an agent or employee, to vent his own spleen or malevolence against the injured person, is a clear departure from his employment and his principal or employer is not responsible therefore.' See, also, *Schulman v. Cleveland* (1972), 30 Ohio St.2d 196,  283 N.E.2d 175. In other words, an employer is not liable for independent self-serving acts of his employees which in no way facilitate or promote his business." *Byrd,* 57 Ohio St.3d at 59.

{¶62} In the case sub judice, appellant argued in opening statements that appellee Garrett, during her time at appellee EMS, held herself out to be an employee of appellee EMS and was, in fact, an employee. Appellant noted that appellee Garrett was listed on their letterhead and signed letters representing that she was an attorney with appellee EMS.  Appellant also noted that appellee Garrett had a fee-splitting arrangement with appellees Emershaw and EMS.

{¶63} In granting the motion for a directed verdict, the trial court held, in relevant part, as follows:

{¶64} "…I listened carefully during the opening statement, and it appeared that all claims that were leveled against Jean Cooper Garrett involve conduct of an intentional nature, misconduct alleging that she intentionally converted funds belonging to the widow [Gredick] to her own personal use, that she intentionally degraded the estate although this was monies that were not in the estate, but were monies that were -- it's Gredick, Thelma Gredick, were her personal funds that she had taken and put into an account in her own name.  That she exercised undue influence, over her.

{¶65} "And I guess from my perspective what I am looking for here that I didn't hear in opening statement was any way in which - - you didn't allege unjust enrichment, any way in which the law firm, Mr. Hicks, Mr. Emershaw, ordered, instructed, directed, had knowledge of, any of these actions on behalf of Jean Cooper Garrett if proven and without any of those, I don't understand what theory of liability there is to hold the law firm or Mr. Hicks or Mr. Emershaw individually as lawyers in the case.

{¶66} "It is not a case of failure to supervise a lawyer that's not involved anymore. There may arguably have been that, although there's some argument that she was on her own. But absent that nexus which you didn't make any references to in your opening statement, because I made notes of it because I knew this was coming, I am looking for some reasons why a directed verdict should not at this point in time be given in favor of those party Defendants." Trial Transcript at 152-153.

{¶67} The trial court further noted that there was a "total lack in my mind of a legal nexus between the conduct of Jean Cooper Garrett if proven and the individual lawyers named as well as the law firm named,…" Trial Transcript at 155.

{¶68} Because appellant failed to argue in opening statements that appellee Garrett's actions were anything other than independent self-serving acts which in no way facilitated or promoted the business of appellee Emershaw or appellee EMS, her opening statement does not support any cause of action against appellee Emershaw and EMS. We find, therefore, that the trial court did not err in granting the motion for a directed verdict.

{¶69} Appellant's third assignment of error is, therefore, overruled.

IV

{¶70} Appellant, in her fourth assignment of error, argues that the trial court erred in denying appellant's motion for leave of court to amend the complaint to conform to the evidence pursuant to Civ.R. 15.

{¶71} When appellee Garrett's deposition was taken in November of 2008, she testified that, at the time she endorsed the check in 2001 with Gredick, she had no recollection as to what had happened with the check. However, appellee Garrett testified that while preparing for trial, she recalled that Gredick gave her the money to "pay her bills and give her [Gredick] cash as directed by her over the years." Trial Transcript at 257. According to appellee Garrett, after formulating the above agreement, they both signed the check. The following is an excerpt from appellee Garrett's trial testimony:

{¶72} "Q. You had an agreement with Thelma [Gredick] that you were to use her money for her benefit, correct?

{¶73} "A. Yes.

{¶74} "Q. And she relied upon that agreement in giving you her check?

{¶75} "A. Yes.

{¶76} "Q. And you didn't do that, did you?

{¶77} "A. I'm not sure how to answer that. I can't say. I know I gave her money. I don't know how much I gave her.

{¶78} "Q. You used the money for your own benefit?

{¶79} "A. It would appear that way.

{¶80} "Q. She didn't give you authority to do that, did she?

{¶81} "A. No." Trial Transcript at 291.

{¶82} Based on appellee Garrett's testimony that she had an agreement with Gredick, appellant's counsel then made a motion to conform to the evidence pursuant to Civ.R. 15, seeking to add claims for breach of written contract, breach of fiduciary duty and unjust enrichment. The trial court overruled such motion.

{¶83} Civ.R. 15(B) states: "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment. * * *" An appellate court reviews a trial court's ruling on a Civ.R. 15(B) motion for abuse of discretion. *Spisak v. McDole*, 15 Ohio St.3d 62, 63, 472 N.E.2d 347 (1984).

{¶84} We find that the trial court did not err in overruling appellant's motion because the trial court's decision was not arbitrary, unconscionable or unreasonable. The record indicates that appellant's counsel knew the day before trial that appellee Gredick was no longer claiming that she had no recollection of what had happened with the check, but rather claimed she had an agreement with Gredick. However, appellant made no motion to amend until near the end of trial. Prior to the commencement of testimony, appellant's counsel indicated to the trial court that the only claims remaining were the claims against appellee Garrett for conversion, fraud and undue influence and the claims against the other appellees based on vicarious liability. During opening statements, appellant's counsel stated that he had received a fax the night before indicating that appellee Garrett was going to change her testimony and testify that she

remembered Gredick telling her that she could have the money to use to help take care of Gredick.  Appellant never mentioned any claims of breach of contract, unjust enrichment or breach of fiduciary duties during opening statements.

{¶85}  Moreover, appellant, in her brief, contends that some of the claims that appellant sought to add were directed at appellees EMS and Emershaw, although it is not clear from the record that appellant sought to add claims against EMS and Emershaw. As is stated above, after their motion for a directed verdict was granted, the case proceeded against appellee Garrett only. Thus, EMS and Emershaw were out of the case by the time the motion to amend was made.

{¶86}  In addition, we find any error made by the trial court in denying the motion to amend to be harmless.  Clearly, the jury found the actions of Garrett to have been intentional, fraudulent and done for her own personal gain.  The jury did not believe her defense that there had been an agreement between Garrett and Gredick for Garrett to keep Gredick's money until Gredick said she needed it.

{¶87}  Based on the foregoing, we find that the trial court did not err in denying appellant's motion for leave of court to amend the complaint to conform to the evidence pursuant to Civ.R. 15.  The trial court's decision was not arbitrary, unconscionable or unreasonable.

{¶88}  Appellant's fourth assignment of error is, therefore, overruled.

V

{¶89}  Appellant, in her fifth assignment of error, argues that the trial court erred in denying her motion for a mistrial and/or new trial pursuant to Civ.R. 59.

{¶90} Civ.R. 59(A) governs grounds for a new trial and states as follows: "A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds: new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:

{¶91} "(1) Irregularity in the proceedings of the court, jury, magistrate, or prevailing party, or any order of the court or magistrate, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial;

{¶92} "(2) Misconduct of the jury or prevailing party;

{¶93} "(3) Accident or surprise which ordinary prudence could not have guarded against;

{¶94} "(4) Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice;

{¶95} "(5) Error in the amount of recovery, whether too large or too small, when the action is upon a contract or for the injury or detention of property;

{¶96} "(6) The judgment is not sustained by the weight of the evidence; however, only one new trial may be granted on the weight of the evidence in the same case;

{¶97} "(7) The judgment is contrary to law;

{¶98} "(8) Newly discovered evidence, material for the party applying, which with reasonable diligence he could not have discovered and produced at trial;

{¶99} "(9) Error of law occurring at the trial and brought to the attention of the trial court by the party making the application.

{¶100} "In addition to the above grounds, a new trial may also be granted in the sound discretion of the court for good cause shown."

{¶101} Our standard of review on a motion for new trial is abuse of discretion. Civ.R. 59. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983). We must look at the totality of the circumstances in the case sub judice, and determine whether the trial court acted unreasonably, arbitrarily or unconscionably.

{¶102} In the case sub judice, after appellee Garrett testified, appellant moved for a mistrial or a new trial "based on the fact that the Court dismissed Emershaw, Mushkat & Schneier and George Emershaw specifically because we only had intentional torts left in this case and that the Court was under the impression that because there was no evidence that Emershaw or Emershaw, Mushkat & Schneier had knowledge of what she had done that those claims were not good." Trial Transcript a 312-313. Appellant noted that Garrett had testified differently at trial than at her deposition as to her recollection of the events of February 10, 2001. Appellant, in support of her motion, stated, in relevant part, as follows:

{¶103} "Therefore, I believe based on the facts of the testimony that came out now and was first developed now gives us the ability or opportunity to ask the Court to let us modify our complaint to conform to the evidence and would therefore, require the Court to grant us a mistrial and a new trial in this case with regard to its dismissal of Emershaw, Mushkat & Schneier and George Emershaw." Trial Transcript at 313.

{¶104} With respect to appellant's argument that she is entitled to a mistrial on the grounds of newly discovered evidence, we note that appellant was aware prior to the commencement of trial that appellee Garrett was changing her testimony. However, despite having knowledge of the change in testimony, appellant did not make any motion prior to the time that appellees Emershaw, Hicks and EMS were dismissed from the case in response to the oral motion for a directed verdict. Moreover, having held that the trial court did not err in denying appellant's motion for a directed verdict or motion to amend, it follows that we find the trial court did not err in denying Appellant's subsequent motion for new trial or a mistrial on such basis.

{¶105} Appellant's fifth assignment of error is, therefore, overruled.

CROSS-APPEAL OF APPELLEE GARRETT

I

{¶106} Appellee Garrett, in her first assignment of error on cross-appeal, argues that the trial court erred in denying her Motion for Summary Judgment and her Motion for Judgment Notwithstanding the Verdict as to the claims for conversion, fraud and undue influence.

{¶107} As is stated above, we review an appeal from summary judgment under a de novo standard of review. *Smiddy v. Wedding Party, Inc.*, 30 Ohio St.3d 35, 506 N.E.2d 212 (1987). Under Civ.R. 56, summary judgment is appropriate when (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion, which is

adverse to the nonmoving party. *Temple v. Wean United, Inc.* 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977).

{¶108} The decision to grant or deny a Civ.R. 50(B) motion for JNOV is reviewed de novo. *Osler v. Lorain*, 28 Ohio St.3d 345, 347,  504 N.E.2d 19, (1986) (equating the test regarding review of a JNOV to the test applied to review a directed verdict). Directed verdict is reviewed de novo. *Goodyear Tire & Rubber Co. v. Aetna Cas. & Sur. Co.,* 95 Ohio St.3d 512, 2002-Ohio-2842, 769 N.E.2d 835, ¶ 4 (setting forth the standard for directed verdict). JNOV is proper if upon viewing the evidence in a light most favorable to the nonmoving party and presuming any doubt to favor the nonmoving party, reasonable minds  could come to but one conclusion, that being in favor of the moving party. Civ.R. 50(B); *Goodyear* at ¶ 3. Such a decision does not determine factual issues, but only questions of law, even though it is necessary to review and consider the evidence in deciding the motion. *Goodyear* at ¶ 4. "Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon [JNOV]." *Osler,* 28 Ohio St.3d at 347, quoting *Posin v. A.B.C. Motor Court Hotel*, 45 Ohio St.2d 271, 275,  344 N.E.2d 334 (1976).

{¶109} Appellee moved for summary judgment, in part, on the basis that appellant's claims against her for conversion, fraud and undue influence were barred by the applicable statute of limitations. The trial court overruled the motion for summary judgment and the matter proceeded to trial. After the verdict was rendered, appellee Garrett, on July 20, 2010, filed a Motion for Judgment Notwithstanding the Verdict, arguing that the claims were barred by the statute of limitations. The motion was overruled.

{¶110} Appellee Garrett, in her motion for summary judgment and in her brief, alleged that the claims for conversion, fraud and undue influence were all legal malpractice claims and that therefore, they were barred by the one year statute of limitations for legal malpractice.  In *Dallas v. Childs*, No. 65150, 1994 WL 284991 (8th Dist. 1994), claims of fraud, breach of fiduciary duty and conversion were brought against an attorney.  The attorney argued that the claims were barred by the one year statute of limitations for legal malpractice.  In rejecting such argument the court, in such case, held as follows:

{¶111} "In his fourth assignment of error, Childs argues that this action was barred by the one year statute of limitations for malpractice. He reasons that this action arises out of an attorney-client relationship. This assignment of error has no merit.

{¶112} "Legal malpractice is defined as professional misconduct involving negligence or breach of contract. See *DiPaola* at 172,[3] citing *Muir v. Hadler Real Estate Mgmt.* (1982), 4 Ohio App.3d 89. The very existence of an attorney client relationship raises a presumption that an attorney acted in good faith in handling his client's affairs. *DiPaola* at 173 citing 6 Ohio Jurisprudence 3d (1978) 644, Attorneys at Law, Section 118.

{¶113} "In order to rebut that presumption and sufficiently allege a cause of action for fraud against attorneys in a situation where the gist of the complaint involves legal malpractice, see *Hibbet v. Cincinnati* (1982), 4 Ohio App.3d 128, plaintiffs must have specifically alleged that defendants committed the actions for their own personal gain. To hold otherwise would be to undermine the purpose and focus of the malpractice statute. Moreover, such requirement is in keeping with the particularity generally

---

[3] The entire citation is *DiPaolo v. DeVictor*, 51 Ohio App.3d 166, 555 N.E.2d 969 (10th Dist. 1988).

necessary to have a well-pleaded complaint in fraud. (Citations omitted.) *DiPaola* at 173. See, also, *Carrocia v. Carrocia* (1985), 21 Ohio App.3d 244. In this case, Dallas specifically alleged in her complaint that Childs committed the actions for his own personal gain. Accordingly, the proper statute of limitations was one for fraud." Id. at 3.

{¶114} Likewise, in the case sub judice, there were allegations that appellee Garrett committed the actions for her own personal gain. We find, therefore, that the one year statute of limitations for legal malpractice was not applicable to such claims.

{¶115} The statute of limitations for fraud and for conversion is four years pursuant to R.C. 2305.09 while the statute of limitations for undue influence also is four years.  See *Creauro v. Duko*, 7th Dist. N. 04 CO 1, 2005-Ohio-1342.

{¶116} As noted by the Ohio Supreme Court in *Cundall v. U.S. Bank*, 122 Ohio St.3d 188, 2009-Ohio-2523, 909 N.E.2d 1244, "'A cause of action for fraud or conversion accrues either when the fraud is discovered, or [when] in the exercise of reasonable diligence, the fraud should have been discovered. *Investors REIT One v. Jacobs* (1989), 46 Ohio St.3d 176, 546 N.E.2d 206, paragraph 2b of the syllabus; *Burr v. Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St.3d 69, 76 [23 OBR 200], 491 N.E.2d 1101. When determining whether the exercise of reasonable diligence should have discovered a case of fraud, the relevant inquiry is whether the facts known "'would lead a fair and prudent man, using ordinary care and thoughtfulness, to make further inquiry * * *."' *Hambleton v. R.G. Barry Corp.* (1984), 12 Ohio St.3d 179, 181 [12 OBR 246], 465 N.E.2d 1298, quoting *Schofield v. Cleveland Trust Co.* (1948), 149 Ohio St. 133,

142 [36 O.O. 477], 78 N.E.2d 167.' *Stokes v. Berick,* Lake App. No. 98–L–094, 1999 WL 1313668, *5.

{¶117}"As the First District has recognized, 'this standard does not require the victim of the alleged fraud to possess concrete and detailed knowledge, down to the exact penny of damages, of the alleged fraud; rather, the standard requires only facts sufficient to alert a reasonable person of the *possibility* of fraud.' (Emphasis added.) *Palm Beach Co. v. Dun & Bradstreet, Inc.* (1995), 106 Ohio App.3d 167, 171, 665 N.E.2d 718. '[C] *onstructive* knowledge of facts, rather than *actual* knowledge of their legal significance, is enough to start the statute of limitations running under the discovery rule." (Emphasis sic.) *Flowers v. Walker* (1992), 63 Ohio St.3d 546, 549, 589 N.E.2d 1284." Id at paragraphs 29-30.

{¶118}In the case sub judice, we find that appellant's claims for conversion, fraud and undue influence were filed within four years of the time in which the fraud was discovered or from when, in the exercise of reasonable diligence, should have been discovered. As is stated above, there was evidence that appellee Garrett told appellant that the CDs were coming due in May of 2004. Although appellant made numerous attempts to find out the status of the CD's in 2004 and 2005, appellee did not respond to the same. As noted by the trial court in its April 1, 2010, Judgment Entry, a reasonable person would have been alerted in 2005 that an improper act had taken place.

{¶119}We find, therefore, that the trial court did not err in denying appellee Garrett's Motion for Summary Judgment and her Motion for Judgment Notwithstanding the Verdict.

{¶120}Appellee's first assignment of error is, therefore, overruled.

II

{¶121}Appellee Garrett, in her second assignment of error, argues that the trial court erred in calculating attorney fees.

{¶122}Following trial, appellant, on February 2, 2011, filed a Motion for Attorney Fees, seeking $172,153.60 in fees. Appellant, in such motion, noted that there was a contingency fee agreement entitling appellant's counsel to 40% of the total recovery. On March 18, 2011, appellant filed a reply brief in support of the Motion for Attorney Fees. Attached to such motion was Statement of Services of Recupero & Associates showing that the law firm had expended over 462 hours on appellant's behalf and that the total bill was for $79,297.84.  A hearing on such motion was held on April 7, 2011. Pursuant to a Judgment Entry filed on April 15, 2011, the trial court ordered that appellee Garrett pay $172,000.00 "as and for attorney fees to the Estate of Thelma Gredick through the Executor of said Estate, and Plaintiff herein, Andrea S. Hicks."

{¶123}Appellee Garrett now maintains that the trial court failed to follow the requirements set forth in *Bittner v. Tri-County Toyota, Inc.,* 58 Ohio St.3d 143, 569 N.E.2d 464 (1991) in calculating attorney fees.

{¶124}Generally, the starting point in determining the amount of attorney fees to award is the computation of the lodestar figure. *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). The lodestar is the number of hours expended multiplied by a reasonable hourly rate. *Hensley,* 461 U.S. at 433. If the court deviates from the lodestar, it must provide a clear explanation. *Hensley,* 461 U.S. at 437.

{¶125}Once the trial court calculates the lodestar figure, the court may modify that calculation by application of the factors listed in DR 2-106(B), now, Ohio Rules of

Professional Conduct 1.5. *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 145, 569 N.E.2d 464 (1991). These factors are: the time and labor involved in maintaining the litigation; the novelty and difficulty of the questions involved; the professional skill required to perform the necessary legal services; the attorney's inability to accept other cases; the fee customarily charged; the amount involved and the results obtained; any necessary time limitations; the nature and length of the attorney/client relationship; the experience, reputation, and ability of the attorney; and whether the fee is fixed or contingent. All factors may not be applicable in all cases and the trial court has the discretion to determine which factors to apply, and in what manner that application will affect the initial calculation. *Id.* at 145-146.

{¶126} Moreover, a determination of the amount of such fees lies within the sound discretion of the trial court. Unless the amount of fees determined is so high or so low as to shock the conscience, an appellate court shall not interfere. *Bittner,* supra at 146. (Citation omitted). Nonetheless, when making a fee award, the trial court must state the basis for the fee determination; absent such a statement, it is not possible for an appellate court to conduct a meaningful review. *Bittner v. Tri-County Toyota, Inc.* supra, at 146.

{¶127} Appellee Garrett, in her brief, argues that the lodestar figure in this case was approximately $75,000.00 and that the trial court provided no explanation as to how it arrived at an attorney fee award of $172,000.00. The trial court failed to provide any explanation as to why deviation from the lodestar figure was reasonable.

{¶128} Appellee Garrett's second assignment of error is, therefore, sustained.

CROSS-APPEAL OF APPELLEES EMS, EMERSHAW AND HICKS

I

{¶129} Appellees EMS, Emershaw and Hicks, in their sole assignment of error on cross-appeal, argue that the trial court erred in denying their Motion for Summary Judgment in part, and their Motion for Reconsideration as they related to claims for repondeat superior/vicarious liability for the actions of appellee Garrett.

{¶130} There is no claim against appellee Hicks based on vicarious liability/respondeat superior. Based on our disposition of the remaining assignments of error in this case, such assignment of error is moot.

{¶131} Accordingly, the judgment of the Stark County Court of Common Pleas is affirmed in part and reversed and remanded in part.

By: Edwards, J.

Farmer, P.J. and

Wise, J. concur

_____

_____

_____

JUDGES

JAE/d0202

[Cite as *Hicks v. Garrett*, 2012-Ohio-3560.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

ANDREA S. HICKS, EXECUTOR     :
OF THE ESTATE OF THELMA A.    :
GREDICK    :
    :
         Plaintiff-Appellant    :
    :
    :
-vs-    :     JUDGMENT ENTRY
    :
JEAN COOPER GARRETT, et al.,    :
    :
         Defendants-Appellees    :     CASE NO. 2011CA00109

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is affirmed in part and reversed and remanded in part. Costs assessed 50% to appellant Andrea Hicks, Executor of the Estate of Thelma Gredick, and 50% to appellee-cross appellant Donald Hicks.

_____

_____

_____

JUDGES