Zimmerman, J.
 

 The general rule pertaining to the liability of banks in connection with the misappropriation or misapplication by fiduciaries of trust funds deposited with such banks is stated in 7 American Jurisprudence, 374, Section 520:
 

 “Although a bank may know or be charged with notice of the trust character of funds on deposit with it, yet it is not necessarily liable if such funds are withdrawn by the fiduciary and misappropriated by him. The contract between the bank and the depositor is that the former will pay according to the checks of the latter, and when they are drawn in proper form by a depositor .upon an account standing in his name as fiduciary, the bank is bound to presume that he is acting lawfully within the performance of his duty? in the absence of knowledge or notice to the contrary,, the bank may and is bound to assume that the fiduciary will appropriate the money, when drawn, to a proper use, and incurs no liability in making such payment. Even though a fiduciary is drawing checks which the
 
 *139
 
 bank may surmise or suspect are for Ms personal benefit, it is bound to presume, in the absence of adequate notice to the contrary, that they are properly and lawfully drawn. It.is not the business of the bank to administer the trust. To charge banks with the ■duty of supervising the administration of trusts when, in the due course of business, they receive checks and ■drafts drawn by, or payable to and properly indorsed by, trustees or fiduciaries in their trust capacity, would place an unreasonable burden upon them and seriously interfere with commercial transactions. The law imposes no such duty upon them.”
 

 This court does not weigh evidence. The record in this case has been examined and we have come to the conclusion that competent evidence exists to support the determinations and judgments below, except as concerns two matters. First, the. acceptance and application by the bank of known trust funds in the amount of $11,922.69 to pay a personal indebtedness ■owed it by William and Sherman Scofield on real estate and commercial loans made to them, and, second, the. acceptance and application by the bank of the further amount of $19,683.42 in known trust' funds to cover overdrafts by Sherman Scofield on the personal’account which he had at the bank.
 

 On the bases that the present action is “in tort at law” brought solely by the successor trustee and that "the bank did not actually know that breaches of trust were involved in the transactions described in the preceding paragraph, which breaches occurred more than four years before the commencement of the present action, the trial court adjudged and the Court of Appeals agreed that the four-year limitation prescribed by Section 11224 (4), General Code, operated in favor ■of the bank to defeat these claims.
 

 Application was made of the rule that an action barred by a statute of limitations against a trustee
 
 *140
 
 who is vested with the legal title to the trust property and while so vested had the power to sue is- likewise barred against a successor trustee or the beneficiaries, as the case may be, notwithstanding the beneficiaries were under disability during the period of limitation. 34 American Jurisprudence, 291, Section 375; 53 Corpus Juris Secundum, “Limitations of Actions,” 955, 956, Section 19; 3 Scott on Trusts, 1777, Section 327
 
 et seq. Veazie
 
 v.
 
 McGugin,
 
 40 Ohio St., 365, 375.
 

 To this general rule, however, there are several exceptions.
 

 For example, the general rule is inapplicable and a successor trustee or the beneficiaries are not barred where a trustee has wrongfully disposed of trust property and is unable or unwilling to bring suit for its recovery. 53 Corpus Juris Secundum, “Limitations of Actions,” 956, Section 19; 4 Bogert on Trusts- & Trustees, 2776, Section 955,
 

 Neither does the general rule apply in an action-against one who has united or participated with a trustee in a breach of the trust, the defendant in such case becoming a trustee
 
 ex maleficio.
 
 In a situation of that kind, a statute of limitations does not begin-to operate until the breach of trust is, or in the nature-of the circumstances ought to have been, discovered by one who has the right, ability and capacity to sue.
 
 Hall
 
 v.
 
 Windsor Savings Bank,
 
 97 Vt., 125, 121 A., 582. See, also,
 
 American Natl. Bank of Enid
 
 v.
 
 Crews,
 
 191 Okla., 53, 126 P. (2d), 733, and 2 Restatement of Trusts, 974, Section 327.
 

 The view also has been expressed that a statute of limitations does not run against beneficiaries where the trustee has wrongfully transferred trust "funds to another, who knows the character thereof, for the-latter’s benefit. In these circumstances, the trustee-is not representing or acting for the trust or the beneficiaries, but for the recipient of the funds and, there
 
 *141
 
 fore, the beneficiaries have no representative
 
 through whom
 
 they can be barred.
 
 Happy
 
 v.
 
 Cole County Bank,
 
 338 Mo., 1025, 93 S. W. (2d), 870.
 

 A perusal of the record in the instant case plainly discloses that from the date of the death of Levi T. Scofield in 1917 up to and including a part of the year 1935, William M. Scofield, as trustee or purporting to act as such (he was not actually appointed by the Probate Court until 1926), and Sherman W. Scofield, as manager of the Schofield Building until the year 1932, were in full and complete control of collecting and disbursing the funds of. the trust, and handled them about as they pleased. Other beneficiaries had little or no knowledge concerning the management and expenditures of such funds, and, as has already been mentioned, three of the ultimate beneficiaries were minors during at least a part of the time the misappropriations and misapplications of the trust funds were being made.
 

 The fifth amended petition herein contains the following allegations:
 

 "Plaintiff says that he had no knowledge of the facts herein alleged concerning the Warner & Swasey agreement and matters in connection therewith until after filing of plaintiff’s second amended petition; that he had no knowledge or information concerning the affairs and administration of said trust prior to the month of January, 1935; * *
 

 Evidence in the record substantiates such allegations with respect to both the successor trustee and other beneficiaries of the trust.
 

 We are in full accord with the proposition that a bank in which trust funds are deposited is not ordinarily liable for monies withdrawn and applied by the trustee to illegal purposes. Otherwise, the banking business would be perilous indeed. But where the bank knows or in particular instances has good rea
 
 *142
 
 son. to believe that a misappropriation of trust funds is being made, especially where the bank is the direct beneficiary of such misappropriations, it finds itself in a different position.
 

 “If a person has knowledge of such facts as would lead a fair and prudent man, using ordinary care and thoughtfulness, to make further inquiry, and he fails to do so, he is chargeable with knowledge which by ordinary diligence he would have acquired.”
 
 Mitchell
 
 v.
 
 First Natl. Bank of Hopkinsville,
 
 203 Ky., 770, 263 S. W., 15.
 

 “ ‘The law seems to be well settled that where an individual attempts to pay his personal indebtedness out of the funds of a * * * trust, by checks drawn against the funds of such * * * trust, the person who receives the same is put upon notice as to the right of the individual to pay his indebtedness out of the funds of the * * * trust, and is bound at his peril to inquire as to the right of the individual so to do.’ Moneys so wrongfully received may be recovered.”
 
 Norristown-Penn. Trust Co.
 
 v.
 
 Middleton,
 
 300 Pa., 522, 526, 150 A., 885, 886.
 

 Here, when William and Sherman Scofield took trust funds, known by the bank to be such, and used such funds to pay their individual indebtedness to the bank with the co-operation of the bank, the latter is fairly chargeable with uniting and participating in a breach of the trust. 4 Bogert on Trusts & Trustees, 2774, Section 955.
 

 In the case of
 
 Mook, Trustee,
 
 v.
 
 Akron Savings & Loan Co., 87
 
 Ohio St., 273, 101 N. E., 278, a trustee borrowed money from a savings and loan company, pledging as collateral security certain stock certificates of the company which it knew belonged to the trust estate. The company also cashed other like certificates at the instance of the trustee, paid him the money and cancelled the certificates. The trustee
 
 *143
 
 used the money so obtained for his own purposes and died insolvent. In an action by the successor trustee against the company this court held as set forth in the third paragraph of the syllabus:
 

 “The company was a party to this breach of trust and conversion, and it must surrender to the plaintiff as successor in the trust, the pledged securities, and pay to him the value of those cancelled, with accumulated dividends and interest.”
 

 See, also,
 
 Shuster
 
 v.
 
 North American Mortgage Loan Co.,
 
 139 Ohio St., 315, 344, 40 N. E. (2d), 130, 143.
 

 “Generally, a bank which receives in payment of a fiduciary’s personal indebtedness to it, or applies to an overdraft in his individual account, known trust funds transferred from the fiduciary’s' trust account to his individual account, is liable to the fiduciary’s principal or
 
 cestui que trust
 
 for the money so received or applied by it.” 145 A. L. R., 448, annotation, citing cases from a number of jurisdictions.
 

 A case in point is that of
 
 Pennsylvania Co. for Insurance on Lives
 
 v.
 
 Ninth Bank & Trust Co.,
 
 306 Pa., 148, 158 A., 251. In the course of its opinion in tha-t ease the court remarked:
 

 “It is well settled that one who accepts a cheek drawn on a trust account to the order of the trustee in payment of a personal debt of the trustee is liable to the beneficiary if the trustee has committed a breach of his obligation * * *,
 

 “The defendant having received trust property from a trustee with knowledge that he was acting wrongfully — was paying off his personal debt with trust funds — joined in the breach of the trust and thus became a trustee
 
 ex maleficio. * * *
 

 “But the statute [of limitations], however, does not begin to run in favor of a participant in a breach of trust until the discovery of the fraud, that is, until the
 
 cestui
 
 knows, or under the circumstances ought to-know, of the facts that give rise to his cause of action.”
 

 
 *144
 
 We are of the opinion that the above principles should govern in the instant case.
 

 .In 1935, sometime after the spoliations had occurred, a new trustee was appointed. Upon qualifying, he* took title to the trust éstate and became vested with all rights of action pertaining to the trust property. At that time the beneficiaries had no title to the trust property, no control over it, and no right of action growing out of its management and disposition. The successor trustee alone was the proper person to bring an action to recoup funds which had been wrongfully and illegally diverted from the trust estate. See 40 Ohio Jurisprudence, 524, Section 227;
 
 Hart
 
 v.
 
 Citizens Natl. Bank,
 
 105 Kan., 434, 185 P., 1; Section 11244, General Code.
 

 As has previously been observed, the statute of limitations does not begin to operate in favor of one who has received known trust funds from a trustee to pay a personal indebtedness owed by the trustee to the recipient of the funds, until such incident is, or in the nature of the circumstances ought to have been, discovered. Within a short time after the breaches of trust had been uncovered, the successor trustee brought his action; such action was timely and the lower courts were in error in applying the four-year limitation contained in Section 11224 (4), General Code, to defeat the claims of the successor trustee with respect to the items under discussion.
 

 Wherefore, the judgment of the Court of Appeals is reversed as to the transactions in which the bank received $11,922.69 of known trust funds in payment *of the real estate and commercial loans made to William and Sherman Scofield individually and as to, the transactions wherein the bank received $19,683.42 of trust funds to cover overdrafts on Sherman’s personal bank account; such judgment is affirmed in all other respects.
 

 
 *145
 
 Final judgment for the amounts as indicated above, with interest, is hereby rendered in favor of the trustee, appellant herein, and against the bank and the cause is remanded to the Court of Common Pleas to carry the judgment of this court into execution, including the computation of interest on each of the various amounts misappropriated from the date of' each of such misappropriations.
 

 Judgment reversed in part and affirmed in part.
 

 Weygandt, C. J., Matthias, Hart, Sohngen and Stewart, JJ., concur.