JOURNAL ENTRY and OPINION
{¶ 1} Appellants Elaine Marks and Madra Glazer appeal the trial court's judgment, which granted summary judgment in favor of KeyBank, accountant William Pouss, accounting firm Deloitte Touche, law firm Rippner, Schwartz Carlin, attorneys James Oliver and Richard Schwartz, law firm Squire, Sanders Dempsey and Sidney Pickus (hereinafter collectively referred to as "appellees"). Marks and Glazer assign seven errors for our review.[1]
 {¶ 2} Having reviewed the record and pertinent law, we affirm the decision of the trial court. The apposite facts follow.
 {¶ 3} Elaine Marks and Sheldon Pickus are the children of Abe and Etta Pickus. Madra Glazer is the daughter of Elaine Marks and granddaughter of Abe and Etta Pickus.[2]
 {¶ 4} When Abe Pickus died in 1980, the beneficiaries in his will were his wife Etta and a trust established on March 14, 1975. The trust set forth that upon Abe's death it was to be divided into two separate trusts: (1) Trust A, for the benefit of Etta for her lifetime and controlled by Etta's will upon her death, and (2) Trust B, for the benefit of Etta for her lifetime, then upon Etta's death, for the benefit of Sheldon Pickus and Elaine Marks, then eventually distributed outright to Abe and Etta's grandchildren.
 {¶ 5} During Abe's lifetime, he and Etta had a partnership known as the "AE Pickus Partnership." The purpose of the partnership was to buy and sell property. Therefore, the partnership assets consisted primarily of real estate. At times, land was purchased in Abe's name, but owned by the partnership. During probate of the Abe Pickus Estate, it became apparent that the ownership of various property needed clarification because some of the parcels were titled in Abe's name instead of the partnership's name.
 {¶ 6} In order to settle the matter, the co-executors of the estate, Sheldon Pickus and Ameritrust, now KeyBank, filed a declaratory judgment action in probate court in 1983. Squire, Sanders Dempsey represented the co-executors in that action. In support of the declaratory judgment, the estate submitted an affidavit executed by Sheldon and a 1982 determination by the IRS affirming that the properties in question were partnership assets. The IRS based its conclusion upon its review of the partnership tax returns dating back to 1952. In further support of this claim, the estate submitted an affidavit by Etta, stating the properties at issue were partnership property. In addition, Etta's affidavit incorporated by reference a letter from William Pouss, the accountant for AE Pickus for thirty-one years, in which Pouss corroborated Etta's statement that the properties were partnership property.
 {¶ 7} Based on this evidence, the probate court declared the real estate holdings in question to be partnership property. As a result, by operation of partnership law, one-half the real estate became Etta's outright and the other half funded the Abe Pickus Trust.
 {¶ 8} When Etta died in 1993, Sheldon was named executor of her estate per the terms of her will. After some monetary bequests, including $40,000 to her daughter Elaine Marks, and $5,000 to her grandchildren Madra Glazer and Bruce Marks, Etta chose to leave the remainder of her estate to Sheldon, including Trust A. Dissatisfied with this distribution, Marks and Glazer filed a will contest and civil action against Sheldon, which was settled for $325,000 in 1996. As part of the settlement, Sheldon and his attorneys received full releases from Marks and Glazer regarding the estates of Abe and Etta Pickus.
 {¶ 9} On September 7, 2001, Marks and Glazer filed a pro se complaint against all the parties involved in the 1983 declaratory judgment action: KeyBank, the law firm of Rippner, Schwartz Carlin, the law firm of Squire, Sanders Dempsey, accountant William G. Pouss, and Sheldon Pickus. Marks and Glazer alleged fraud in connection with the 1983 declaratory judgment action. The complaint was subsequently voluntarily dismissed.
 {¶ 10} After the voluntary dismissal, appellee Rippner, Schwartz 
Carlin filed a motion for sanctions, asserting that Marks' and Glazer's claims were wholly unfounded. A hearing was conducted on the motion. The court did not award sanctions, but considered it a "close decision."
 {¶ 11} On June 12, 2003, over one year after dismissing the prior action, Marks and Glazer, represented by counsel, refiled the complaint against the same parties but added as defendants attorneys James Oliver and Richard Schwartz and the accounting firm of Deloitte Touche. Four theories of liability were asserted: (1) tortious interference with inheritance, (2) civil conspiracy, (3) fraud, and (4) breach of fiduciary duty.
 {¶ 12} These were substantially the same claims alleged in the first action, which was voluntarily dismissed. These claims all centered on Marks' and Glazer's contention that the appellees committed fraud in conjunction with the 1983 declaratory judgment action by changing the name on the disputed partnership property from Abe Pickus to that of the partnership.
 {¶ 13} The appellees filed motions for summary judgment, which the trial court granted. The trial court found the release contained in the 1996 settlement agreement barred the claims and that the statute of limitations on the claims had also expired. Marks and Glazer now appeal.
 {¶ 14} Because we find Marks' and Glazer's sixth and seventh assigned errors dispositive of this appeal, we will address them first. Marks and Glazer argue that the release contained in the settlement agreement does not apply to their claims against appellees and the statute of limitations on the claims did not expire. We disagree.
 {¶ 15} We review an appeal from summary judgment under a de novo standard of review.[3] Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate.[4] Under Civ.R. 56, summary judgment is appropriate when: (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the non-moving party, reasonable minds can reach only one conclusion which is adverse to the nonmoving party.[5]
 {¶ 16} The moving party carries an initial burden of setting forth specific facts which demonstrate his or her entitlement to summary judgment.[6] If the movant fails to meet this burden, summary judgment is not appropriate; if the movant does meet this burden, summary judgment will be appropriate only if the non-movant fails to establish the existence of a genuine issue of material fact.[7]
 {¶ 17} In 1994, Marks and Glazer filed a complaint in probate court contesting the Last Will and Testament of Etta Pickus. The action was settled in 1996. In exchange for Sheldon paying Marks and Glazer $325,000, Marks and Glazer signed a settlement agreement which contained a release.
 {¶ 18} "It is axiomatic that a settlement agreement is a contract designed to terminate a claim by preventing or ending litigation and that such agreements are valid and enforceable by either party."[8]
Further, settlement agreements are highly favored in the law.[9] With these policies in mind, we look to the terms of the settlement agreement to determine whether Marks and Glazer agreed, as part of the settlement, to release the appellees from any liability.
 {¶ 19} Paragraph two of the release indicates the parties intended to release the following individuals:
"2. Releases — Subject to the performance of all obligations andresponsibilities called for hereunder, the parties hereby release andfully discharge each other and each of the attorneys who have representedthem at any time in connection with any matter covered by the terms ofthis agreement, in any and all capacities hereinabove set forth and theirheirs, executors, administrators, assigns and successors in interest fromany and all claims, losses, damages, actions, causes of action, expensesor compensation, on account of or in any way arising from * * *:"
 {¶ 20} Thus, the broad language of the release operates to release Sheldon, in both his individual and co-executor capacity, as well as KeyBank in its capacity as co-executor. The attorneys who were involved "at any time in connection with any matter covered by the terms of this agreement" are also released. Therefore, the attorneys were released from liability if they were involved with any matter contained in the release and not just when representing Sheldon Pickus. The release went on to list a broad release of any claims involving the following:
"a. the Abe Pickus estate;
 "b. the Abe Pickus trust;
 "c. the Last Will and Testament of Etta Pickus;
 "d. the Estate of Etta Pickus or the administration thereof;
 "e. all assets of Etta Pickus;
 "f. all documents executed by Etta Pickus, including but not limited topowers of attorney, wills, codicils, and deeds;
 "g. any other claims or cause of action whatsoever having to do withthe estate, trust or assets of Abe Pickus or the Estate of Etta Pickus orany other matter which could have been raised in connection with theprobate will contest, the Common Pleas Court Case or the estates of EttaPickus or Abe Pickus or the Abe Pickus trust arising at any time from thebeginning of time to the dismissal of the Common Pleas Court case and thedisposition of the real property pursuant to paragraph 3 of thisAgreement, whichever is later."
 {¶ 21} Pursuant to the release, Marks and Glazer waived "any and all" claims against the Abe and Etta Pickus Trusts, and in exchange received $325,000. Thus, because Marks' and Glazer's claims in the instant action arise out of the disposition of the Abe and Etta Pickus Trusts, they are clearly covered by the release.
 {¶ 22} It is questionable whether the release extends to Deloitte 
Touche and accountant William Pouss. However, even if it does not absolve them from liability, the statute of limitations bars any claim against those parties.
 {¶ 23} A cause of action in fraud is subject to a four-year statute of limitations.[10] Marks and Glazer concede that the four-year statute of limitations applies to their claims because the claims are all grounded in fraud. Marks and Glazer contend, however, that they did not discover the alleged fraud until 2000, when KeyBank attempted to distribute the remaining assets of the trust in order to terminate it.[11]
 {¶ 24} The discovery rule set forth in R.C. 2305.09(D) is applicable to claims founded in fraud.[12] "The discovery rule operates to extend the time in which a party may file a complaint. Generally, the discovery rule states that the statute of limitations does not begin to run until the plaintiff discovered, or through the exercise of reasonable diligence, should have discovered, the complained of injury."[13] When determining whether, through the exercise of reasonable diligence, a party should have discovered a case of fraud, the relevant inquiry is whether the facts known "`would lead a fair and prudent man, using ordinary care and thoughtfulness, to make further inquiry * * *.'"[14]
 {¶ 25} In the instant case, Marks and Glazer, through the exercise of reasonable diligence, should have discovered the 1983 declaratory judgment when they filed the 1994 contest of Etta Pickus' Last Will and Testament. The disposition of the assets of Abe and Etta Pickus was directly at issue in that action as indicated by the terms of the settlement agreement. The declaratory judgment has been a matter of public record for over twenty years. A person exercising ordinary care and thoughtfulness would have reviewed the public record that was the subject of those proceedings when filing the 1994 action.
 {¶ 26} Further, the 1996 settlement agreement expressly addresses the valuation and distribution of the real estate assets held in the partnership trusts. The agreement specifically directs the trustee to divide the Abe Pickus Trust into two separate subtrusts known as B-1 and B-2 and to equally divide the real estate holdings of the trust between each.[15] Trust B-2 was to be established for the benefit of Marks and Glazer.[16] The agreement further directed the trustee to sell the real estate holdings of Trust B-2 to Sheldon Pickus for $25,991.99.[17]
Thus, by executing the settlement agreement, Marks and Glazer agreed that the value of their interest in the real estate assets in Trust B was $25,991.99. A reasonable person exercising ordinary care and thoughtfulness would have investigated the nature of the real estate assets held in the trust prior to agreeing to the valuation of those assets in the settlement agreement. However, Marks and Glazer did not seek clarification of the assets contained in the trust until KeyBank attempted to make the final distribution in 2000. It was then that Marks and Glazer claim to have discovered the 1983 declaratory judgment action.[18]
 {¶ 27} Thus, because Marks and Glazer filed the instant action nine years after filing the 1994 Will Contest action and seven years after the settlement agreement, the four-year statute of limitations has expired. Accordingly, Marks' and Glazer's sixth and seventh assigned errors are overruled.
 {¶ 28} Based on our disposition of the sixth and seventh assigned errors, Marks' and Glazer's remaining assigned errors are moot.[15]
Judgment affirmed.
It is ordered that appellees recover of appellants their costs herein taxed.
The Court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Rocco, J., and Kilbane, J., Concur.
 APPENDIX ASSIGNMENTS OF ERROR
 "I. The trial court erred in granting all of appellees' motions forsummary judgment since genuine issues of material fact existed as toappellants' claims of tortuous (sic) interference with an expectancy of aninheritance."
 "II. The trial court erred in granting all of appellees' motions forsummary judgment since genuine issues of material fact existed as toappellants' claims of civil conspiracy."
 "III. The trial court erred in granting all of appellees' motions forsummary judgment since genuine issues of material fact existed as toappellants' claims of fraudulent misrepresentation."
 "IV. The trial court erred in granting appellees Sheldon Pickus's andKey Bank's motions for summary judgment since genuine issues of materialfact existed as to those appellants' claims of breach of fiduciaryduty."
 "V. The trial court erred in granting all of appellee's motions forsummary judgment since genuine issues of material fact existed as toappellants' claims of punitive damages."
 "VI. The trial court erred as a matter of law in granting appellees'motions for summary judgment since the 1996 settlement agreement andrelease did not bar appellants' claims."
 "VII. The trial court erred as a matter of law in its grant of all ofappellees motions for summary judgment in holding that appellants' claimswere barred by the applicable statute of limitations."
[1] See appendix.
[2] Etta, Abe, and Sidney Pickus will be referred to by their first names when necessary for ease of discussion.
[3] Baiko v. Mays (2000), 140 Ohio App.3d 1, citing Smiddy v. TheWedding Party, Inc. (1987), 30 Ohio St.3d 35; Northeast Ohio Apt. Assn.v. Cuyahoga Cty. Bd. of Commrs. (1997), 121 Ohio App.3d 188.
[4] Id. at 192, citing Brown v. Scioto Bd. of Commrs. (1993),87 Ohio App.3d 704.
[5] Temple v. Wean United, Inc. (1997), 50 Ohio St.2d 317, 327.
[6] Dresher v. Burt, 75 Ohio St.3d 280, 292-293, 1996-Ohio-107.
[7] Id. at 293.
[8] Spercel v. Sterling Industries (1972), 31 Ohio St.2d 36, 38; see, also, 15 Ohio Jurisprudence 3d (1979) 511, 516, Compromise, Accord, and Release, Sections 1 and 3; and Bolen v. Young (1982), 8 Ohio App.3d 36.
[9] State ex rel. Wright v. Weyandt (1977), 50 Ohio St.2d 194;Spercel, 31 Ohio St.2d at 38.
[10] R.C. 2305.09(C).
[11] Pursuant to the terms of Abe Pickus' Trust, the trust was to terminate five years from the date of Etta's death.
[12] Investors REIT One v. Jacobs (1989), 46 Ohio St.3d 176, 182.
[13] Id. at 179.
[14] Hambleton v. R.G. Barry Corp. (1984), 12 Ohio St.3d 179, 181, quoting Schofield v. Cleveland Trust Co. (1948), 149 Ohio St. 133, 142.
[15] Settlement Agreement at paragraph 3(a).
[16] Id.
[17] Id. at paragraph 3(b).
[18] Marks' affidavit at paragraphs 4 and 5; Glazer's affidavit at paragraphs 11 and 12.
[15] App.R. 12(A)(1)(c).