FRANK D. CELEBREZZE, JR., J.:
{¶ 1} Defendant-appellant, Farmers Insurance of Columbus, Inc. ("Farmers") challenges the trial court's order certifying a class of individuals that purchased uninsured motorist coverage from Farmers between October 1994 and September 1997. Farmers argues that class certification is inappropriate. After a thorough review of the record and law, this court affirms.
I. Factual and Procedural History
{¶ 2} The instant matter is premised on the Ohio Supreme Court's decision in Martin v. Midwestern Group Ins. Co. , 70 Ohio St.3d 478, 639 N.E.2d 438 (1994) (hereinafter " Martin v. Midwestern Group "). In Martin v. Midwestern Group , on October 5, 1994, the Ohio Supreme Court invalidated the "other-owned vehicle" exclusion to uninsured/underinsured motorist ("UM/UIM") coverage in every automobile insurance policy in Ohio. The court held that "[a]n automobile liability insurance policy provision which eliminates uninsured motorist coverage for persons insured thereunder who are injured while occupying a motor vehicle owned by an insured, but not specifically listed in the policy, violates R.C. 3937.18 and is therefore invalid." Id. at paragraph three of the syllabus. The Martin v. Midwestern Group decision removed the necessity for insureds to pay UM/UIM premiums on each of the vehicles in their policy. Rather, they would have UM/UIM coverage while in any of their owned vehicles if a UM/UIM premium was paid on one vehicle.
{¶ 3} Prior to and at the time of the Martin v. Midwestern Group decision, plaintiff-appellee William Bowen had an automobile insurance policy through Farmers. Bowen had multiple vehicles on the policy, and he paid UM premiums on each vehicle.
{¶ 4} On March 31, 2009, Bowen filed a complaint against Farmers alleging that Farmers continued to assess multiple premiums for UM coverage despite the Ohio Supreme Court's holding in Martin v. Midwestern Group . Bowen filed an amended complaint on June 26, 2009. He filed a second amended complaint on January 8, 2010. In the second amended complaint, Bowen asserted causes of actions for breach of contract and fraud relating to Farmers' practice of assessing multiple UM premiums for UM coverage, even after a UM premium was paid on a first vehicle.
{¶ 5} On February 26, 2010, Farmers filed a motion to dismiss Bowen's second amended complaint. On May 14, 2010, the trial court granted Farmers' motion to dismiss *647 the second amended complaint on the breach of contract claim; the trial court denied Farmers' motion to dismiss on the fraud claim.
{¶ 6} On December 31, 2015, Farmers filed a motion for summary judgment, arguing that Bowen's fraud claim was barred by the applicable four-year statute of limitations.[1] Bowen filed a brief in opposition on June 14, 2011. Farmers filed a reply brief on June 27, 2011. On January 24, 2013, the trial court denied Farmers' motion for summary judgment.
{¶ 7} On March 12, 2015, Farmers filed a motion to strike class allegations pursuant to Civ.R. 23(D)(4) for want of bringing the fraud claim within the statute of limitations. Bowen filed a brief in opposition on April 2, 2015. The trial court denied Farmers' motion to strike class allegations on June 17, 2015.
{¶ 8} On December 31, 2015, Bowen filed a motion for class certification. Bowen sought to certify a class as defined as follows: "all persons who purchased automobile insurance from Farmers and paid premiums identified as paying for UM coverage on more than one vehicle in the household at any time during the period October 1994 through September 1997."
{¶ 9} Farmers filed a brief in opposition on February 16, 2016. In opposing Bowen's motion for class certification, Farmers argued that Bowen could not satisfy the superiority and predominance requirements under Civ.R. 23(B)(3). Specifically, Farmers argued that the following individual issues would overwhelm common issues: (1) the application of the four-year statute of limitations, (2) proof of class members' desire or lack of desire to obtain guest coverage, and (3) proof of actual reliance. Furthermore, Farmers asserted that proposed class includes members that were not harmed and did not suffer any damages from Farmers' practice of allocating UM premiums on a per-vehicle basis. Bowen filed a reply brief in support of his motion for class certification on March 1, 2016.
{¶ 10} The trial court held a hearing on Bowen's motion for class certification on April 4, 2016. On March 8, 2017, the trial court granted Bowen's motion for class certification.
{¶ 11} On April 6, 2017, Farmers filed the instant appeal challenging the trial court's judgment. Farmers assigns three errors for review:
I. The trial court erred in certifying an overly broad class consisting entirely of class members whose claims are barred by the statute of limitations.
II. The trial court erred by finding that common questions predominated where an injury-in-fact to each class member cannot be proven by common evidence.
III. The trial court erred by finding that common questions predominated because, if tolling can apply to the class claims, the trial court failed to consider the highly individualized inquiries necessary to determine whether each class member's claim was timely.
II. Law and Analysis
A. Standard of Review
{¶ 12} A trial court has broad discretion in determining whether to certify a class action. Konarzewski v. Ganley, Inc. , 2017-Ohio-4297, 82 N.E.3d 1191, ¶ 8. This court will not disturb the trial court's determination absent an abuse of discretion. Id. , citing Marks v. C.P. Chem. Co., Inc. , 31 Ohio St.3d 200, 509 N.E.2d 1249 (1987), syllabus. "The trial court's discretion *648 is not unlimited, but is bound by and must be exercised within the framework of Civ.R. 23." Konarzewski at id. , citing Hamilton v. Ohio Savs. Bank , 82 Ohio St.3d 67, 70, 694 N.E.2d 442 (1998). A trial court abuses its discretion when its decision is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore , 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).
{¶ 13} "[A] party seeking certification pursuant to Civ.R. 23 bears the burden of demonstrating by a preponderance of the evidence that the proposed class meets each of the requirements set forth in the rule." Cullen v. State Farm Mut. Auto. Ins. Co. , 137 Ohio St.3d 373, 2013-Ohio-4733, 999 N.E.2d 614, ¶ 15. The following seven requirements must be met in order for a class action to be maintained under Civ.R. 23 :
(1) an identifiable class must exist and the definition of the class must be unambiguous; (2) the named representatives must be members of the class; (3) the class must be so numerous that joinder of all members is impracticable; (4) there must be questions of law or fact common to the class; (5) the claims or defenses of the representative parties must be typical of the claims or defenses of the class; (6) the representative parties must fairly and adequately protect the interests of the class; and (7) one of the three Civ.R. 23(B) requirements must be met.
Hamilton at 71, 694 N.E.2d 442, citing Civ.R. 23(A) and (B), and Warner v. Waste Mgt. , 36 Ohio St.3d 91, 521 N.E.2d 1091 (1988). In order to certify a class under Civ.R. 23(B)(3), the trial court must find (1) "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and (2) "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Cullen at ¶ 29.
{¶ 14} If the party seeking certification fails to meet any one of the Civ.R. 23 requirements, class certification must be denied. Konarzewski at ¶ 9, citing Blue Ash Auto, Inc. v. Progressive Cas. Ins. Co. , 8th Dist. Cuyahoga Nos. 104251 and 104252, 2016-Ohio-7965, 2016 WL 7076639, ¶ 11.
B. Overbroad Class
{¶ 15} In the first assignment of error, Farmers argues that the trial court erred by misconstruing Ohio law regarding the application of the discovery rule and tolling the statute of limitations. As a result, Farmers asserts, the trial court certified an overbroad class, consisting entirely of class members whose claims are barred by the four-year statute of limitations applicable to Bowen's and the class members' fraud claim.
{¶ 16} Pursuant to the first Civ.R. 23(B) requirement, "the class must be identifiable and defined unambiguously." Clark v. Park 'N Fly , 8th Dist. Cuyahoga No. 94379, 2011-Ohio-323, 2011 WL 304653, ¶ 15.
"The requirement that there be a class will not be deemed satisfied unless the description of it is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure (2 Ed.1986) 120-121, Section 1760. Thus, the class definition must be precise enough "to permit identification within a reasonable effort." Warner [36 Ohio St.3d at 96, 521 N.E.2d 1091 ].
Hamilton , 82 Ohio St.3d at 71-72, 694 N.E.2d 442.
*649 {¶ 17} This court has explained that the identifiable class requirement is not to be confused with the predominance requirement set forth in Civ.R. 23(B)(3). Clark at ¶ 18. The predominance requirement inquires whether "separate adjudications are likely required to finally determine the action." Hamilton at 73, 694 N.E.2d 442. "The focus at this stage is on how the class is defined. 'The test is whether the means is specified at the time of certification to determine whether a particular individual is a member of the class.' " Hamilton at id. , quoting Planned Parenthood Assn. of Cincinnati, Inc. v. Project Jericho , 52 Ohio St.3d 56, 63, 556 N.E.2d 157 (1990).
{¶ 18} In his motion for class certification, Bowen sought to certify a class as defined as follows: "all persons who purchased automobile insurance from Farmers and paid premiums identified as paying for UM coverage on more than one vehicle in the household at any time during the period October 1994 through September 1997." Put another way, Bowen's proposed class definition sought to certify a class of persons who Farmers had charged more than one UM premium for UM coverage.
{¶ 19} A proposed class is sufficiently definite if it is "appropriately defined by reference to defendant's conduct." Hamilton, 82 Ohio St.3d at 73, 694 N.E.2d 442. " '[A]ny class, the definition of which depends on the 'state of mind' of the prospective members, would be difficult to sustain, [and] the class, where possible, should be defined upon the basis of the manner in which the defendant acted toward an ascertainable group of persons.' " Id. , quoting Bernard v. First Natl. Bank of Oregon , 275 Ore. 145, 156-157, 550 P.2d 1203 (1976). This court has recognized that "if one need only look to the actions of the defendant to determine whether an individual is a member of the class, then it would be an abuse of discretion to deny class certification based on the absence of an identifiable class." Clark , 8th Dist. Cuyahoga No. 94379, 2011-Ohio-323, 2011 WL 304653, at ¶ 19, citing Hamilton at 74, 694 N.E.2d 442.
{¶ 20} After reviewing the record, we find that the definition of Bowen's class is unambiguous and sufficiently definite. In order to determine whether an individual is a member of the class, the trial court need only look to the actions or practices of Farmers, rather than the state of mind of any prospective class members. The definition permits identification of class members with reasonable effort.
{¶ 21} This information-whether an insured paid multiple UM premiums for UM coverage-could be easily obtained by reviewing Farmers' business records. As the trial court recognized in its judgment entry granting Bowen's motion for class certification, "[a] data expert at Farmers testified that he could create a list of insureds that falls within [Bowen's proposed class definition] from [Farmers'] records, so the class members are identifiable."
{¶ 22} Farmers' statute of limitations argument presents factual and legal issues-whether Bowen and the class members discovered or should have discovered the facts giving rise to the fraud claim by paying multiple UM premiums-rather than focusing on how the class is defined. See Hamilton, 82 Ohio St.3d at 73, 694 N.E.2d 442. These factual and legal issues do not come into the Civ.R. 23 analysis until the court considers the predominance and superiority requirements set forth in Civ.R. 23(B)(3). Marks , 31 Ohio St.3d at 202, 509 N.E.2d 1249 ; Hamilton at 73, 694 N.E.2d 442.
{¶ 23} Based on the foregoing analysis, we find that the trial court properly found that Bowen met the threshold requirement *650 of establishing an identifiable and unambiguous class. Accordingly, Farmers' first assignment of error is overruled.
C. Civ.R. 23(B)(3) Predominance Requirement
1. Injury-in-Fact Proven By Common Evidence
{¶ 24} In the second assignment of error, Farmers argues that the trial court erred by finding that common questions predominated because an injury-in-fact to each class member cannot be proven by common evidence. Furthermore, Farmers contends that the trial court abused its discretion in accepting Bowen's theory of injury-in-fact and damages.
{¶ 25} Farmers directs this court to DeVall v. Erie Ins. Group , 9th Dist. Summit No. 17300, 1996 WL 27925 (Jan. 24, 1996). In DeVall , the plaintiffs-appellants filed a class action against Erie Insurance Group alleging that after the Martin v. Midwestern Group decision, Erie improperly charged UM/UIM premiums on a per vehicle basis without assuming any additional risk. Appellants argued that in order to comply with Martin v. Midwestern Group , Erie was required to charge UM premiums on a per person basis. Erie filed a motion for summary judgment and a supporting affidavit from an agent of the insurance company. The agent explained the method by which Erie determines the cost of UM coverage and explained the way in which the company passes those costs along to the insured. Furthermore, the agent asserted that the cost of providing UM coverage to appellants was $198, and explained that the figure would be the same regardless of whether it was assessed on a per-vehicle or per-person basis. Id. at 2. The trial court granted Erie's motion for summary judgment.
{¶ 26} On appeal, the Ninth District affirmed the trial court's ruling, concluding that "[a]ppellants have not produced any evidence that they overpaid for the insurance coverage they received: they have simply pointed to [ Martin v. Midwestern Group ] and argued that they could have obtained the same coverage had they only insured one of their vehicles." Id. ; see Fairhurst v. Owners Ins. Co. , 9th Dist. Summit No. 17402, 1996 WL 148623, 1 (Apr. 3, 1996) (appellate court rejected the plaintiffs-appellants' argument that insurance company received additional money without assuming additional risk by charging UM premiums on a per-vehicle basis because appellants failed to provide any evidence that they overpaid for the coverage they received.); Jefferys v. State Farm Mut. Auto. Ins. Co. , 5th Dist. Stark No. 1996CA00048, 1996 WL 752882, 2 (Oct. 28, 1996) (appellate court rejected plaintiffs' argument that pursuant to Martin v. Midwestern Group , it was unlawful for insurance company to charge multiple UM premiums).
{¶ 27} In the instant matter, Farmers argues that it did not increase the rates for UM coverage post- Martin v. Midwestern Group , it simply continued its policy of charging UM premiums on a per-vehicle rather than a per-person basis. Farmers emphasizes that damages cannot be presumed based solely on the fact that an insured paid multiple UM premiums for UM coverage. In order to determine whether an insured overpaid for UM coverage, Farmers asserts that the following must also be considered: (1) the total amount of premium(s) paid, (2) the coverage received, (3) the risk of being insured, (4) insurance rate-setting practices, (5) the number of vehicles in a particular household, and (6) the number of persons in a particular household.
{¶ 28} Farmers argues that when all of these factors are taken into consideration, it becomes evident that some prospective *651 class members received adequate UM coverage, or even more UM coverage, by paying UM premiums on a per-vehicle rather than a per-person basis. In fact, Farmers contends that if it had re-rated UM premiums post- Martin v. Midwestern Group on a per-person rather than a per-vehicle basis, some prospective class members-including Bowen himself-would have paid more for UM coverage.
{¶ 29} Bowen, on the other hand, directs this court to Baughman v. State Farm Mut. Auto. Ins. Co. , 88 Ohio St.3d 480, 727 N.E.2d 1265 (2000). In Baughman , plaintiffs, who paid multiple premiums for UM coverage, filed a complaint against their insurance company, State Farm, alleging that (1) State Farm charged premiums for UM coverage that it had no intention of providing, (2) the additional UM premiums were of no value and/or conferred no additional benefit or UM coverage, and (3) State Farm charged the additional UM premiums without informing insureds of the Martin v. Midwestern Group decision or that payment of a UM premium on one vehicle provided UM coverage to all resident relatives in the household. Plaintiffs asserted causes of action for fraud, conversion, unjust enrichment, negligence, breach of implied covenant or duty of good faith and fair dealing, and the return of insurance premiums based on a failure to disclose. The trial court granted the plaintiffs' motion for class certification.
{¶ 30} On appeal, State Farm argued that the trial court abused its discretion by finding that plaintiffs satisfied the Civ.R. 23 typicality, predominance, and superiority requirements. The appellate court emphasized that plaintiffs continued to renew their insurance policies with State Farm after they had a clear understanding of Martin v. Midwestern Group and after they had instituted the civil action. The appellate court concluded that the trial court abused its discretion in determining that plaintiffs satisfied the typicality requirement because plaintiffs' claims and State Farm's potential defenses would not be representative of the prospective class members who paid multiple UM premiums without knowledge of Martin v. Midwestern Group and the change in law.[2]
{¶ 31} The Ohio Supreme Court reversed the Ninth District's judgment, holding that the trial court did not abuse its discretion in determining that the typicality requirement was satisfied. The court explained,
[plaintiffs] allege that State Farm wrongfully charged them separate premiums for uninsured/underinsured motorist coverage on each of their vehicles without disclosing that only one vehicle in the household need have uninsured/underinsured motorist coverage in order to provide such protection to all resident relatives, regardless of which vehicle they may be occupying when injured. In addition, [plaintiffs] allege that the policies they purchased all contained other-owned-vehicle exclusions, as well as a provision stating that policy terms could only be changed by an endorsement signed by one of State Farm's executive officers. These allegations form the essential gravamen of [plaintiffs'] six claims for relief. These claims arise from the same alleged wrongful practice and course of conduct that forms the claims of the class, and they are based on the same legal theories as those of the other class members. In attempting to establish liability, it appears that appellants will introduce evidence *652 showing State Farm's past practice of informing its insureds of changes in the law bearing on coverage or policy terms, particularly those wrought by judicial decision that affected other-owned-vehicle exclusions, its failure to inform of [ Martin v. Midwestern Group ] or the invalidity of the other-owned-vehicle exclusion, and the presence of the integration clause in their policies. This is the same kind of evidence that all class members would be required to present in support of their claims. Thus, the adjudication of [plaintiffs'] claims against State Farm would necessarily involve a determination of State Farm's liability to the class generally, thereby aligning [plaintiffs'] litigation interests with those of the class.
Id. at 488, 639 N.E.2d 438.
{¶ 32} Bowen also directs this court to Martin v. Grange Mut. Ins. Co. , 143 Ohio App.3d 332, 757 N.E.2d 1251 (11th Dist.2001) (hereinafter " Martin v. Grange Mut. I "), where the Eleventh District distinguished DeVall , Fairhurst , and Jefferys from Baughman :
After carefully reviewing the [ DeVall , Fairhurst , and Jefferys ] decisions, it is readily apparent that all three decisions are distinguishable from the instant matter. In those cases, the plaintiffs filed complaints in which they claimed that, based on [ Martin v. Midwestern Group ], it was illegal for insurers to charge multiple premiums for uninsured/underinsured coverage. They contended that by charging their premium on a per vehicle basis, the insurance companies were actually imposing an additional premium without assuming any additional risks.
In each case, the trial court granted the insurer summary judgment. On appeal, these decisions were affirmed, primarily on the basis that [ Martin v. Midwestern Group ] did not hold that every insurance policy that contained an "other owned vehicle" exclusion was illegal. Rather, [ Martin v. Midwestern Group ] merely held that those particular provisions were unenforceable. Thus, they reasoned that the fact that "other owned vehicle" exclusions were unenforceable did not necessarily mean that every insured who paid uninsured/underinsured coverage on more than one vehicle overpaid. * * *
Unlike Jefferys , Fairhurst , and DeVall , appellants are not strictly seeking the return of "overpaid" premiums. Rather, they are claiming that appellee actively misled them into paying for coverage that was no longer necessary. Therefore, the case at bar is certainly more analogous to Baughman as opposed to Jeffe [r ]ys , Fairhurst , or DeVall .
Martin v. Grange Mut. I at 341-342, 757 N.E.2d 1251.
{¶ 33} In the instant matter, Bowen is not merely claiming that he "overpaid" for UM coverage or that, pursuant to Martin v. Midwestern Group , it was illegal for Farmers to charge multiple premiums for UM coverage. Rather, like Baughman , Bowen claims that Farmers (1) actively misled him and class members into paying for UM coverage that was no longer necessary and/or (2) misled him and class members into paying for guest coverage. Accordingly, we find this case to be more analogous to Baughman and Martin v. Grange Mut. I than Jefferys , Fairhurst, or DeVall .
{¶ 34} In attempting to establish liability, it appears that Bowen will introduce evidence-particularly, his declaration sheets-showing that (1) Farmers misrepresented the nature of his UM coverage and/or the nature of the multiple UM premiums assessed, and (2) Farmers failed to inform insureds of the *653 Martin v. Midwestern Group decision. This is the same evidence that all class members will be required to present to support their fraud claims. Accordingly, the adjudication of Bowen's fraud claim against Farmers will necessarily involve a determination of Farmers' liability to the class generally.
{¶ 35} Farmers maintains that all of the prospective class members were not damaged by Farmers' practice of charging UM premiums on a per-vehicle basis post- Martin v. Midwestern Group . In support of its brief in opposition to Bowen's motion for class certification, Farmers submitted an expert report from actuary Paul Anderson. Anderson opined, in relevant part, that if Farmers had re-rated UM premiums after Martin on a per-person rather than a per-vehicle basis, "Bowen's total UM premium would have increased, and among other households included in the class definition, some class members would have paid more UM premium and some would have paid less." Furthermore, Anderson explained,
[t]hose class members that would have paid more UM premium with an exposure unit of "persons" include those households where the number of vehicles was less than the number of persons. Those class members that would have paid less UM premium with an exposure unit of "persons" include those households where the number of vehicles was greater than or equal to the number of persons.
{¶ 36} The Eleventh District considered a similar argument in Martin v. Grange Mut. Ins. Co. , 11th Dist. Geauga No. 2004-G-2558, 2004-Ohio-6950, 2004 WL 2937308 (hereinafter " Martin v. Grange Mut. II "). There, the insurance company argued that the named plaintiffs' claims were not typical of the claims of the class members. In support of this argument, Grange Mutual set forth
a hypothetical evaluation demonstrating the practical effect of [ Martin v. Midwestern Group ] on the premiums of individual policyholders. Based upon this evaluation, Grange Mutual determined that premiums would vary and the [named plaintiffs], as class representatives, perhaps would have paid a higher or lower premium compared to the other class members.
Martin v. Grange Mut. II at ¶ 21. The appellate court rejected Grange Mutual's disparate damages argument, finding that both the named plaintiffs' claims and the class members' claims were "predicated upon common evidence relating to Grange Mutual's failure to disclose legal information, thereby allowing Grange Mutual to charge additional premiums for uninsured/underinsured motorist coverage." Martin v. Grange Mut. II at ¶ 25. Furthermore, the court explained,
Grange Mutual's argument, that a possible disparity exists between the Martins' damages and the class members' damages, is based upon various presumptions of fact. The record before us establishes that each class member's damages could be mathematically calculated by determining the multiple premiums paid by the individual class member from October 5, 1994, through September 2, 1997. Thus, the court could easily and quickly determine the exact amount due each class member without the presentation of additional evidence from every individual of the class. See, e.g., Hamilton . Here, the issue of disparate damages does not preclude class certification.
Martin v. Grange Mut. II at ¶ 28.
{¶ 37} In the instant matter, Bowen's and the class members' fraud claim is predicated upon common evidence relating to Farmers' misrepresentations about the nature of the multiple UM premiums *654 and/or the nature and extent of UM coverage, thereby allowing Farmers to charge additional UM premiums. Farmers' damages argument is based on various presumptions of fact, such as the presumption that post- Martin v. Midwestern Group , UM premiums would have been determined by using persons rather than vehicles as the exposure unit.
{¶ 38} Finally, the record reflects that each class members' damages could be mathematically calculated by determining the multiple UM premiums paid by the individual class members from October 5, 1994, through September 2, 1997. Accordingly, the trial court could easily determine the exact amount due to each class member without requiring each individual class member to present additional evidence. See Martin v. Grange Mut. II at ¶ 28, citing Hamilton .
{¶ 39} Based on the foregoing analysis, Farmers' second assignment of error is overruled.
2. Statute of Limitations
{¶ 40} In the third assignment of error, Farmers argues that even if the discovery rule can apply to toll the statute of limitations, the trial court erred by finding that Bowen satisfied the predominance requirement because highly individualized inquiries are necessary to determine whether the class members' claims were timely. Specifically, Farmers argues that individualized inquiries will be required to determine whether class members knew or should have known about (1) the facts giving rise to their claims-payment of multiple UM premiums-or (2) the Martin v. Midwestern Group decision and its effect.
{¶ 41} Initially, we address Bowen's argument that Farmers is improperly challenging the merits of the fraud claim.
{¶ 42} "Class action certification does not go to the merits of the action." (Emphasis sic.) Ojalvo v. Bd. of Trustees of Ohio State Univ. , 12 Ohio St.3d 230, 233, 466 N.E.2d 875 (1984). However, in deciding whether a plaintiff meets the burden for class certification under Civ.R. 23, a trial court is required to consider "what will have to be proved at trial and whether those matters can be presented by common proof." Cullen , 137 Ohio St.3d 373, 2013-Ohio-4733, 999 N.E.2d 614, at ¶ 17, citing 7AA Wright, Miller & Kane, Federal Practice and Procedure , Section 1785 (3d Ed.2005).
{¶ 43} The United States Supreme Court has recognized that a trial court's rigorous analysis of Civ.R. 23 will often "overlap with the merits of the plaintiff's underlying claim." Wal-Mart Stores, Inc. v. Dukes , 564 U.S. 338, 351, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011). When a Civ.R. 23 requirement and a merit issue overlap, a trial court may examine the underlying merits of a plaintiff's claim, but only to the extent necessary to determine whether the Civ.R. 23 requirement is satisfied. Wal-Mart at id.
{¶ 44} The United States Supreme Court has made clear, however, that "the office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the 'metho[d]' best suited to adjudication of the controversy 'fairly and efficiently.' " Amgen, Inc. v. Connecticut Retirement Plans & Trust Funds , 568 U.S. 455, 460, 133 S.Ct. 1184, 185 L.Ed.2d 308 (2013). Wal-Mart and Amgen have clarified that at the class-certification stage, trial courts may probe the underlying merits of an action, but only for the purpose of determining whether the plaintiff has satisfied the prerequisites of Fed.R.Civ.P. 23. See also Comcast Corp. v. Behrend , 569 U.S. 27, 133 S.Ct. 1426, 185 L.Ed.2d 515 (2013).
*655 {¶ 45} In the instant matter, the statute of limitations issues Farmers raises in its third assignment of error pertain to the merits of Bowen's fraud claim. After reviewing the record, we find that the superiority and predominance requirements set forth in Civ.R. 23(B) overlap with the merits of Bowen's fraud claim and the statute of limitations issues raised by Farmers. Accordingly, we must consider the statute of limitations issues in addressing Farmers' third assignment of error and determining whether the trial court abused its discretion in determining that Bowen satisfied the predominance requirement pursuant to Civ.R. 23(B).
{¶ 46} In support of its argument that the fraud claim is time-barred, Farmers argues that the discovery rule does not apply because (1) knowledge of multiple UM premiums, rather than knowledge of the illegality of these premiums or the Martin v. Midwestern Group decision triggered the statute of limitations, and (2) Bowen and the prospective class members knew or should have known about the multiple UM premiums because they were reflected in the insureds' declaration sheets. Because the multiple premium charges were reflected in the declaration sheets, Farmers argues that Bowen and the prospective class members knew or should have known that they were paying multiple premiums, and thus, were put on notice to inquire further about the nature of the multiple premium charges. Furthermore, Farmers argues that Bowen's ignorance of the law-the Martin v. Midwestern Group decision-does not toll the four-year statute of limitations.
{¶ 47} Bowen, on the other hand, argues that the only billing documents that customers received were the declarations sheets. He emphasizes that the declaration sheets only listed the gross amount of premiums charged for each vehicle, rather than clearly listing or itemizing the UM premiums. In other words, Bowen argues that he and the class members were unable to determine that something was awry-that they were being charged UM premiums on second and third vehicles-by simply looking at the declaration sheets because the declaration sheets do not disclose or reveal that insureds were being charged additional UM premiums
{¶ 48} The trial court explained that Bowen filed his original complaint well after the four-year statute of limitations had expired. As such, the trial court recognized that "a determination must be made as to when [he] actually discovered or should have discovered the fraud." In finding that Bowen satisfied the superiority requirement, the trial court stated, in relevant part:
For Bowen, the evidence shows that he had actual knowledge [of the fraud] only a short while before the complaint was filed. So the issue for [Bowen] is whether he should have discovered the fraud more than four years before first filing on March 31, 2009. When determining whether, through the exercise of reasonable diligence, a party should have discovered a case of fraud, the relevant inquiry is whether the facts known would lead a fair and prudent man, using ordinary care and thoughtfulness, to make further inquiry. Marks [v. KeyBank N.A. , 8th Dist. Cuyahoga No. 84691, 2005-Ohio-769, 2005 WL 433528, ¶ 24 ].
* * *
That leaves, for any class member, the questions of when and whether they should have discovered they had been defrauded. For all of them-including Bowen-that is a question of fact that only has to be decided once, since the evidence that Farmers pointed at to demonstrate that Bowen, through reasonable *656 diligence and in the absence of actual knowledge of the fraud, should have discovered the fraud long before 2005 will be the same evidence it uses to show that any class members should have discovered the fraud. In other words, the application of the statute of limitations to bar Bowen's claim will rest on whether with reasonable diligence he should have discovered the fraud before 2005, based on information actually known to him-namely, the payment of multiple UM premiums-and information he arguably should have known-the specific language of his policy and the [ Martin v. Midwestern Group ] decision and its effect. This exact inquiry will apply equally to all class members since knowledge of the payment of their premiums may be implied and the rest is simply a reasonable person test.
Thus, Bowen has satisfied the superiority requirement.
{¶ 49} After reviewing the record, we cannot say that the trial court abused its discretion in determining that Bowen satisfied the predominance requirement under Civ.R. 23(B).
{¶ 50} In Lynch v. Dial Fin. Co. of Ohio No. 1, Inc. , 101 Ohio App.3d 742, 656 N.E.2d 714 (8th Dist.1995), plaintiffs-appellants filed an action in April 1992 alleging that the defendants violated the Second Mortgage Loan Act by charging them for credit accident and health insurance to secure three loans made between 1976 and 1978. Defendants moved for summary judgment, arguing, in relevant part, that appellants' claims for statutory damages were barred by the applicable one-year statute of limitations. The trial court granted the defendants' motion for summary judgment, and appellants appealed to this court.
{¶ 51} On appeal, appellants argued that the one-year statute of limitations should be tolled because they did not discover that the statute was violated or that they were injured until their lawyer explained the law to them in December 1991. This court rejected appellants' argument and held that their claims were barred by the one-year statute of limitations:
In this case, plaintiffs knew or should have known about the charges for accident and health insurance because they were itemized on the face of the loan documents which they signed in the latter 1970s. What plaintiffs "discovered" seventeen years later is that their lawyer told them that these charges allegedly violated R.C. 1321.57. That "discovery" cannot be used to circumvent the statute of limitations or limitations would become meaningless.
(Emphasis added.) Lynch at 748, 656 N.E.2d 714.
{¶ 52} In Sullivan v. Westfield Ins. Co. , 11th Dist. Lake No. 2012-L-004, 2013-Ohio-146, 2013 WL 221436, plaintiffs-appellants had an automobile insurance policy with Westfield prior to and in October 1994 when the Martin v. Midwestern Group decision was released. Three cars were insured under the policy and appellants paid UM and/or UIM premiums on all three vehicles. The policy was up for renewal on December 10, 1994; appellants did not pay their premiums and Westfield cancelled their insurance policy on June 6, 1995. Fifteen years later, appellants filed a class action complaint against Westfield alleging that the insurance company "unnecessarily and fraudulently continued to charge them premiums for UM/UIM coverage on more than one vehicle, despite the holding in [ Martin v. Midwestern Group .]" Id. at ¶ 5. Appellants alleged that Westfield represented to them that the premium payments for vehicles after the first was for UM coverage when the payments were actually for guest coverage.
*657 Westfield filed a motion for summary judgment, arguing that appellants' claims were barred by the applicable statutes of limitations. In opposing Westfield's summary judgment motion, appellants argued that they had only recently discovered that the additional premiums were not for UM/UIM coverage, and thus, the discovery rule tolled the four-year statute of limitations for the misrepresentation and fraud claim. Id. at ¶ 11. The trial court granted Westfield's motion for summary judgment, concluding that appellants' claims were time barred. "[T]he trial court found that [appellants] had constructive knowledge of the facts giving rise to their claim, and that constructive knowledge was sufficient to begin the running of the statute of limitations." Id. at ¶ 13.
{¶ 53} On appeal, the Eleventh District held that the trial court properly determined that the discovery rule did not apply to appellant's fraud claim because appellants "had knowledge of all the relevant facts back in 1994" and they "did not demonstrate why, in the exercise of due diligence from the release of the [ Martin v. Midwestern Group ] decision in 1994, they could not have discovered the alleged fraud." Id. at ¶ 33. The court explained,
The UM/UIM premiums applied to each of their three vehicles are obvious from their declaration sheet , thus they are presumed to know the contents of their policy and that they were being assessed these charges. See Michigan Auto Ins. Co. v. Van Buskirk , 115 Ohio St. 598, 606, 4 Ohio Law Abs. 336, 5 Ohio Law Abs. 63, 155 N.E. 186 (1927). Furthermore, Mr. Sullivan, in his affidavit, confirmed that he had in fact reviewed the declaration page and was aware they were being charged multiple UM/UIM premiums . While the Sullivans were not aware of the legal significance of these multiple premiums, nor the fact that it was legally unnecessary to pay a separate premium for each automobile to provide UM/UIM coverage to them and their resident family members, that lack of understanding of the legal significance does not act to toll the running of the statute. "Ignorance of the law does not toll the statute of limitations." Lynch v. Dial Finance Co. of Ohio, Inc. , 101 Ohio App.3d 742, 748, 656 N.E.2d 714 (8th Dist.1995).
(Emphasis added.) Sullivan at ¶ 34.
{¶ 54} After reviewing the record in the instant matter, it is evident that Lynch and Sullivan are distinguishable.
{¶ 55} In support of his motion for class certification, Bowen submitted the transcript of his January 18, 2011 deposition. Exhibits C and D of Bowen's deposition are declaration sheets from Bowen's policy for a 1994 Plymouth Voyager and a 1987 Chevrolet Cavalier. These declaration sheets indicate (1) that Bowen has UM coverage on both vehicles, (2) the policy limits of the UM coverage, (3) that Bowen also has coverage for bodily injury, "P.D.," "Medical/No-Fault," Comprehensive, and Collision on both vehicles, and (4) the total amount of premium charges for each vehicle. The declaration sheets do not, however, specify what portion of the total premium balance is a premium for UM coverage. Farmers acknowledges as much in its reply brief: "the declaration sheet does not indicate what portion of the total premium paid is for the UM coverage[.]" Appellants' reply brief at 5, fn. 3.
{¶ 56} Exhibits Nos. 7 (F0014), 8 (F0015), and 9 (F0013) of Feldman's deposition are Farmers' internal documents pertaining to Bowen's policy. These documents, unlike the declaration sheets, clearly reflect (1) that Bowen was charged separate UM premiums for his different vehicles, and (2) the precise amounts of these separate UM premiums.
*658 {¶ 57} Accordingly, unlike Lynch and Sullivan , the record reflects that the separate UM premiums for each vehicle were not clearly listed or itemized in the insured's declaration sheets. Had the separate UM premiums been clearly listed or itemized, and had Bowen knowingly paid the multiple UM premiums, he would have been put on notice, or should have been put on notice, to further inquire about the nature of or the coverage received for the multiple UM premium payments. This was not the case. Rather, Bowen knowingly made multiple premium payments, but the documents did not specify that he was charged multiple UM premiums. Accordingly, we cannot say that Bowen, having knowingly made multiple premium payments, was put on notice, or should have been put on notice, to further inquire about the nature of or the coverage received for the multiple UM premiums that were not clearly identified or itemized in the declaration sheets.
{¶ 58} In the instant matter, the facts giving rise to Bowen's and the class members' fraud claim is the payment of additional UM premiums on top of the UM premium paid on a first vehicle. As noted above, the declaration sheets clearly indicate (1) that Bowen had UM coverage for his vehicles, (2) the policy limits of the UM coverage for each vehicle, and (3) the gross amount of premium charges for each vehicle. However, the declaration sheets do not indicate that Bowen was being charged a separate UM premium on each vehicle, nor do they indicate what portion, if any, of the total premium amount is a UM premium. Accordingly, we cannot say that Bowen actually knew, or should have known, about the facts giving rise to his fraud claim-the payment of multiple UM premiums-based on the information set forth in the declaration sheets.
{¶ 59} Bowen asserts that the declaration sheets are the only document that Farmers' insureds receive that sets forth billing information. Farmers does not argue that its insureds received different versions of the declaration sheets. Thus, Bowen and the class members all had the same information available to them-the information set forth in the declaration sheets-regarding UM coverage, the UM coverage's policy limits, and the total amounts of premium charges for each vehicle. Thus, individual inquiries will not be required in order to determine whether, based on the information set forth in the insured's declaration sheets, Bowen and class members knew or should have known that they were paying multiple UM premiums.
{¶ 60} Finally, Farmers argues that some class members may have known that they were paying multiple UM premiums or were aware of the Martin v. Midwestern Group decision and its import. However, the Ohio Supreme Court has held,
"[t]hat a statute of limitations may bar the claims of some, but not all, class members does not compel a finding that individual issues predominate over common ones. * * * Rather, as long as there is a sufficient common nucleus of common issues, differences in the application of a statute of limitations to individual class members will not preclude certification under Rule 23(b)(3)."
Hamilton , 82 Ohio St.3d at 84, 694 N.E.2d 442, quoting 5 Moore, Federal Practice, Section 23.46[3], at 23-210 to 23-211 (3d Ed.1997).
{¶ 61} Based on the foregoing analysis, we agree with the trial court's determination that a class action is superior to other available methods for fairly and efficiently adjudicating this case. The record reflects that the prospective class shares a common nucleus of operative facts and asserts *659 the same theory of liability. The substantive elements of the class members' claims require the same proof for each class member, and the class is clearly bound together by a mutual interest in resolving common questions to an extent that is greater than individual interests that may divide the class. Accordingly, the common questions, which represent a significant aspect of this case, predominate over questions related to individual class members.
{¶ 62} For all of the foregoing reasons, we find no basis upon which to conclude that the trial court abused its discretion in finding that Bowen satisfied the predominance requirement under Civ.R. 23(B). Farmers' third assignment of error is overruled.
III. Conclusion
{¶ 63} After thoroughly reviewing the record, we find that the trial court conducted the requisite rigorous analysis in determining whether Bowen satisfied the prerequisites for class certification pursuant to Civ.R. 23. Furthermore, we cannot say that the trial court abused its discretion in certifying the class in this case.
{¶ 64} Judgment affirmed.
EILEEN A. GALLAGHER, A.J., and TIM McCORMACK, J., CONCUR

R.C. 2505.09.

Baughman v. State Farm Mut. Auto. Ins. Co. , 9th Dist. Summit No. 19087, 1999 WL 64587 (Feb. 9, 1999).